971 A.2d 1173

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Charles Joseph LUCARELLI, Appellee.**

Supreme Court of Pennsylvania.

Argued May 13, 2008.

Decided May 27, 2009.

Gary Eugene Norton, Esq., Bloomsburg, for Commonwealth of Pennsylvania.

Joseph Raymond Viola, Esq., Padova, Lisi & Della Guardia, Philadelphia, for Charles Joseph Lucarelli.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice McCAFFERY.

In this matter, we granted allowance of appeal to consider whether the Superior Court erred in its determination that Appellee, Charles Joseph Lucarelli, after engaging in a course of conduct spanning 8½ months, did not forfeit his right to counsel. We hold that it did and, therefore, reverse the Superior Court's order granting a new trial and remand to that court for further proceedings.

The factual background of this case, as recounted by the Superior Court, is as follows:

> On January 11, 2004, Michael Lee Bennett, his wife and four-year-old twins were sitting in a parked car in the parking lot of Kreiser's Truck Stop in Mifflinville, Columbia County. Bennett looked into his side rear view mirror and saw [Appellee's] car approaching. Bennett testified that he saw [Appellee's] car spray some "liquid" out of its passenger-side, rear-quarter panel behind the right rear wheel onto his car. [Appellee's] car sprayed the liquid onto the whole length of the driver's side of Bennett's car in a "steady stream" from four or five feet away. Bennett testified that the liquid "sort of smelled like WD–40 or like paint thinner."
>
> Being concerned as to the contents of the liquid, Bennett called 911 and talked to the authorities while he followed [Appellee's] car. The chase resulted in a circuitous tour that

ended back at Kreiser's Truck Stop. The police arrived shortly thereafter, followed by the local Mifflinville Volunteer Fire Company, the Bloomsburg Volunteer Fire Company HAZMAT Team, emergency medical technicians and the personnel and staff of Minuteman Spill Response, Inc. The police arrested [Appellee], the authorities quarantined Bennett's car, and an ambulance took Bennett and his family to Berwick Hospital's emergency room decontamination area. Upon examination of [Appellee's] car, the police discovered that it was rigged up with an intricate system to pump and spray a liquid substance from two different ports in the right side. A pump was connected to the electrical system of the vehicle and was operated by a switch that was installed in the dashboard. Because [Appellee] would not disclose the chemical composition of the liquid, the HAZMAT team secured the liquid from his car and had it tested. John James Tobin of Seewald Laboratories used a mass spectrometer and confirmed that the liquid was highly toxic and flammable, being composed of aromatic and aliphatic solvents, acetone, tolu[e]ne, methylene chloride, ammonium hydroxide, and isopropyl alcohol. The police also executed a search warrant at [Appellee's] residence and found Tough Job remover, acetone, rubbing alcohol, paint stripper, and other milky, unknown substances. Fortunately, no one was injured during these events and Bennett's car was not damaged.

*Commonwealth v. Lucarelli,* 914 A.2d 924, 925–26 (Pa.Super.2006).

On January 12, 2004, Appellee was arrested on charges of terroristic threats, recklessly endangering another person, risking a catastrophe, intentional criminal mischief with pecuniary loss in excess of $ 5,000, and disorderly conduct. The procedural background subsequent to Appellee's arrest, key to our determination here, is as follows:

**March 4, 2004:** The trial court appointed Daniel Lynn, Esquire, to serve as Appellee's stand-by counsel.

**March 12, 2004:** Appellee posted $100,000 cash bond.

**March 15, 2004:** Robert Kurtz, Esquire, entered his appearance for Appellee by filing a motion for bail reduction.

**March 19, 2004:** Mr. Kurtz withdrew his appearance.

**Between March 19 and April 7, 2004:** Appellee retained Thomas Marsilio, Esquire, to represent him. Mr. Marsilio filed a request for a bill of particulars and a petition for a writ of *habeas corpus.*

**April 7, 2004:** Mr. Marsilio represented Appellee at an evidentiary hearing on the petition for a writ of *habeas corpus.*

**June 17, 2004:** Mr. Marsilio petitioned to withdraw as counsel, which Appellee responded to by filing a *pro se* "Petition for Due Process Violation and Attorney Misconduct."

**July 8, 2004:** The trial court held a hearing on Mr. Marsilio's motion to withdraw. The court granted the withdrawal request and suggested that Appellee "get somebody else to look at his case." Appellee explained to the trial court that he did not have any money because he had already paid Mr. Marsilio $10,000.00. The court informed Appellee that he could apply for a public defender, but Appellee stated that the public defender's office did not "want him." Appellee insisted that he did not want Mr. Marsilio to withdraw as his attorney.

**July 13, 2004:** The trial court held a hearing regarding Appellee's trial date, in which Appellee appeared *pro se* and asked to be represented by a public defender. The court directed a member of the court staff to secure an application for the public defender for Appellee. The court rescheduled trial for September.

**August 5, 2004:** Status listing at which Appellee appeared without an attorney.

**August 26, 2004:** The trial court held a hearing regarding the outstanding motions filed by Appellee. Appellee appeared without counsel, and the court advised Appellee that the case would be tried either in September or November.

**September 8, 2004:** Appellee failed to appear for jury selection, and the trial court issued a bench warrant for his arrest.

**September 10, 2004:** The trial court rescinded its bench warrant, and Appellee filed a *pro se* "Re–Submit Petition Hearing to Know Who all Defendants Accusers Are" and a "Petition/Hearing for Alleging That of Concealing two South Centre Township Police by Commonwealth."

**September 13, 2004:** Appellee filed a *pro se* "Petition/Motion for Effective Counsel."

**September 15, 2004:** The trial court entered an order appointing David Trathen, Esquire, as Appellee's stand-by counsel. Appellee then filed six more petitions: (1) "Re–Submit Petition and Motion Under the Americans with Disabilities Act;" (2) "Petition for Hearing Complaint I filed in Columbia County Prison Taken By Lieutenant Joseph Wondoloski of Being Assaulted;" (3) "Petition for Hearing for Recusal;" (4) "Petition for Hearing to Resubmit Any Unanswered Exculpatory Evidence;" (5) "Petition for Hearing for Dr. Brian Snyder for Concealing Exculpatory Evidence;" and (6) "Petition for Effective Council Under Sixth Amendment."

**October 7, 2004:** The trial court held a hearing to address Appellee's *pro se* petitions, including his petitions for effective counsel. The court ordered that Mr. Trathen remain as stand-by counsel. Appellee stated that he did not wish to proceed alone before a jury. Thereafter, the trial court reduced Appellee's bail from $ 100,000 to $ 80,000, so that Appellee could have funds to retain counsel. The trial court denied Appellee's Petitions for Effective Counsel as moot, and told Appellee to retain a lawyer. Appellee stated he was not giving his money to a "bank robber" such as named former counsel.

**November 2, 2004:** Appellee appeared for jury selection without an attorney.

**November 15, 2004:** Appellee appeared for trial without an attorney, and without an explanation for having failed to

retain one. Throughout the trial, Appellee proceeded *pro se* with the assistance of his stand-by counsel, Mr. Trathen.

On November 16, 2004, following a two-day trial, a jury convicted Appellee on all charges except for terroristic threats.[1] Appellee subsequently retained the services of Carmen Marinelli, Esquire, who represented Appellee at sentencing. On June 28, 2005, the trial court sentenced Appellee to 60 days' to 18 months' imprisonment for the criminal mischief conviction. However, the court immediately paroled Appellee, and imposed community service and mental health counseling requirements as conditions of his parole. On the convictions of recklessly endangering another person, risking a catastrophe and disorderly conduct, the court sentenced Appellee to two concurrent terms and one consecutive term of 12 months' probation. The court further ordered Appellee to pay restitution in the amount of $18,300.26 to cover the Bennetts' medical expenses and also the expenses that the various governmental agencies and authorities had incurred.

Appellee appealed his judgment of sentence to the Superior Court, which held that Appellee had neither forfeited nor waived his right to counsel. Holding that the trial court had denied Appellee his constitutional right to be represented by counsel, the Superior Court granted a new trial. *Lucarelli, supra* at 925. Specifically, the Superior Court determined that Appellee had not forfeited his right to counsel because he had not engaged in either abusive or threatening conduct, nor had he engaged in extremely dilatory conduct. *Id.* at 930–31. The Superior Court also concluded that the trial court had erred when it allowed Appellee to proceed to trial *pro se* with stand-by counsel without first conducting a proper colloquy on the record, pursuant to Pennsylvania Rule of Criminal Procedure 121,[2] to ensure Appellee's knowing, voluntary and intelli-

---

1. The terroristic threats charge was dismissed at the end of the trial.

2. While the Commonwealth had conceded that the trial court had not conducted an on-the-record colloquy to determine whether Appellee had waived his right to counsel, *Lucarelli, supra* at 929, the Superior Court nonetheless reviewed the record and determined that the trial court had failed to cover any of the areas set forth in the comment to

gent waiver of counsel. *Lucarelli, supra* at 931–32. Judge Orie Melvin filed a dissenting opinion in which she concluded that Appellee had effectively forfeited his right to counsel through his course of conduct. *Id.* at 932–36. The Commonwealth filed a petition for allowance of appeal with this Court, which was granted on July 31, 2007.

Our grant of allowance of appeal in this case is limited to a single question: did the Superior Court err in applying the doctrine of forfeiture of the right to counsel? *Commonwealth v. Lucarelli*, 593 Pa. 335, 929 A.2d 642 (2007).[3] Because we are reviewing a pure question of law, with no relevant facts in dispute, we apply a *de novo* standard of review. *Commonwealth v. Worthy*, 598 Pa. 470, 957 A.2d 720, 724 (2008).

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. *Rothgery v. Gillespie County*, ── U.S. ──, 128 S.Ct. 2578, 2583 n. 8, 171 L.Ed.2d 366 (2008). Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. *Commonwealth v. McDonough*, 571 Pa. 232, 812 A.2d 504, 506 (2002). However, the constitutional right to counsel of one's own choice is not absolute. *Commonwealth v.*

Rule 121 to ascertain whether Appellee had knowingly, voluntarily, and intelligently waived his right to counsel. *Id.* at 931.

**3.** Appellee argues that this issue was waived because it was not explicitly addressed by the trial court. *See* Appellee's Brief at 41–49. This argument entirely misses the point. Instead of verbally addressing forfeiture, the trial court imposed forfeiture by calling the case to trial in November, as it had informed Appellee it would do, regardless of whether Appellee had counsel on the day set for trial. The absence of a formal announcement of forfeiture is of no moment in light of the trial court's action in proceeding with trial. There was nothing for the Commonwealth to address because the trial court was proceeding to trial as the Commonwealth desired. And, there would have been no point in the trial court conducting a Rule 121 waiver colloquy, because Appellee had made it clear from the outset that he was **not interested** in waiving his right to counsel. That is precisely why the trial court found itself with no choice but to compel Appellant to proceed to trial on November 15, 2004.

*Randolph,* 582 Pa. 576, 873 A.2d 1277, 1282 (2005) (citing and quoting *Commonwealth v. McAleer,* 561 Pa. 129, 748 A.2d 670, 673–74 (2000)). Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. *Randolph, supra* at 1282. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. *Id.*

■ We have previously stated that by insisting on particular counsel who is unavailable or by insisting on private counsel but failing to take any steps to retain an attorney, a defendant may be deemed to have waived the right to have counsel of his or her choice. *Commonwealth v. Szuchon,* 506 Pa. 228, 484 A.2d 1365, 1376 (1984). Where a defendant knowingly and intelligently refuses appointed counsel while insisting on privately retained counsel without taking steps to secure such private counsel, the defendant must be prepared to accept the consequences of his or her choice. *Id.* at 1377. Although we framed the issue as one of waiver in *Szuchon,* we now conclude that a more precise analysis requires us to recognize the distinction between "waiver" of the right to counsel and "forfeiture" of the right to counsel.

■ Like the Superior Court in *Commonwealth v. Thomas,* 879 A.2d 246, 257–59 (Pa.Super.2005), we find persuasive the distinction between waiver and forfeiture made by the Third Circuit Court of Appeals in *United States v. Goldberg,* 67 F.3d 1092, 1099–1101 (3d Cir.1995). Waiver is "an intentional and voluntary relinquishment of a known right." *Id.* at 1099. By contrast, forfeiture, as defined by the Third Circuit, does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's "extremely serious misconduct" or "extremely dilatory conduct." *United States v. Thomas,* 357 F.3d 357, 362 (3d Cir.2004) (quoting *Goldberg, supra* at 1100–02). *See also Com-*

*monwealth v. Coleman,* 905 A.2d 1003, 1006–08 (Pa.Super.2006) (affirming a finding of forfeiture where defendant, who had the means to retain counsel, appeared without counsel or engaged in behavior that forced counsel to withdraw).

The consequences of the distinction between waiver of the right to counsel and forfeiture of the right to counsel are significant because, we now hold, Pa.R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture is found. To hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance. Should an unrepresented defendant choose not to engage in the colloquy process with the trial court, were there no provision for forfeiture of counsel, that defendant could impermissibly clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice. Such a result would be untenable. *See United States v. Thomas, supra* at 362 ("Forfeiture can result regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se.*") (quoting *Goldberg, supra* at 1101). We reject Appellee's suggestion that the Commonwealth must demonstrate that Appellee "knowingly and intelligently" engaged in conduct that had the inevitable effect of impairing his constitutional right to counsel. *See* Appellee's Brief at 60. We hold today that where a defendant's course of conduct demonstrates his or her intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel.

Upon examining the jurisprudence developed by other jurisdictions regarding forfeiture of the right to counsel, we observe that defendants have been held to have forfeited the right to counsel where they have either engaged in physically abusive and threatening conduct, or have engaged in dilatory conduct. *See e.g., Minnesota v. Lehman,* 749 N.W.2d 76, 81–

82 (Minn.Ct.App.2008), *review denied,* 2008 Minn. LEXIS 478 (Minn. filed August 5, 2008) (collecting cases and holding that defendant forfeited his right to court-appointed counsel where defendant attacked and beat the attorney in open court); *Bultron v. State,* 897 A.2d 758 (Del.2006) (holding that defendant forfeited his right to counsel where he engaged in ongoing abuse of his attorney and requiring defendant to proceed *pro se* at trial); *Wilkerson v. Klem,* 412 F.3d 449, 454 (3d Cir.2005) (holding that a defendant who had been duly notified of the date of his trial, who had been advised to obtain counsel in sufficient time to be ready for trial, and who appeared on the scheduled date without counsel and with no reasonable excuse for his failure to have counsel present, forfeited his right to counsel).

Upon review and consideration of the circumstances of the instant case, we hold that the Superior Court erred in its application of the doctrine of forfeiture of the right to counsel and erred in awarding Appellee a new trial. Appellee's behavior, over a course of 8½ months, was sufficiently obstructive to mandate a conclusion of forfeiture because he engaged in extremely dilatory conduct. Appellee had more than eight months to prepare for trial; had the financial means to retain counsel; did retain counsel on several occasions, although the attorneys were permitted to withdraw when the attorney-client relationship deteriorated; was given access to $20,000 by the trial court some five weeks before the commencement of trial for the purpose of retaining counsel; and failed to offer an explanation for not having retained counsel by the start of trial. Appellee simply decided not to retain private counsel because he did not wish to spend the money. Contrary to the Superior Court's conclusion, we hold that the trial court acted properly in directing Appellee to proceed to trial *pro se*.[4] Thus, we hold further that the Superior Court committed an error of law in failing to recognize that Appellee's pattern of behavior constituted extremely dilatory conduct, sufficient to result in the forfeiture of his right to counsel.

4. That the trial court appointed stand-by counsel to assist Appellee in this case is immaterial to our holding.

Order reversed. Case remanded to the Superior Court for proceedings consistent with this Opinion.

Justice EAKIN and BAER join the opinion.

Chief Justice CASTILLE files a concurring opinion.

Justice TODD files a dissenting opinion in which Justice SAYLOR joins.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion, which reverses the Superior Court's grant of a new trial, subject to the three observations expressed below.

First, I write to further address the waiver issue posed by appellee in footnote 3 of the Majority Opinion. Appellee claims that the Commonwealth waived its argument that appellee forfeited his right to counsel because the Commonwealth did not raise that theory in the trial court. Like the Majority, I believe the Commonwealth's forfeiture argument is reviewable here. I write to explain why I believe that is so.

The Superior Court majority in this case faulted the trial court for allowing appellee to proceed to trial *pro se* (albeit with standby counsel at taxpayer expense) without first conducting an affirmative counsel waiver colloquy pursuant to Pa.R.Crim.P. 121(A)(2), and held that the trial court thereby "denied [appellee's] constitutional right to be represented by counsel because [appellee] did not knowingly and voluntarily give up the right to be represented by counsel." *Commonwealth v. Lucarelli*, 914 A.2d 924, 932 (Pa.Super.2006). Thus, the key to the finding of error was the absence of a Rule 121 colloquy, which was presumed to render appellee's waiver or forfeiture of counsel at trial invalid.

However, appellee himself did not complain in the trial court about the failure to engage him in a Rule 121 counsel waiver colloquy, either at any of his numerous pre-trial hearings or at the trial itself, despite the fact that appellee commented on his *pro se* status (albeit with standby counsel) and was directly asked by the trial court if he had any other

issues to raise before the start of trial. N.T. 11/15/04, at 3. Obviously, if appellee had complained, the judge could have remedied that alleged lapse immediately, and appellee's winning appeal issue in Superior Court would have disappeared. Rather, appellee's actual complaint at the trial level involved a request that the trial court either: (a) order Attorney Marsilio, his former attorney, to return his retainer; or (b) order Attorney Marsilio to continue to represent him despite the trial court's finding that the attorney-client relationship had completely broken down. Furthermore, after the trial court reduced appellee's bail for the specific purpose of making $20,000 available to appellee to retain new counsel, appellee still appeared at his previously scheduled jury selection on November 2, 2004, without retaining a lawyer. Appellee then proceeded to represent himself (with the assistance of standby counsel) at trial, again, without objection.

On a record such as this, and in a legal system that respects one's free will, a strong argument can be made that it was appellee who waived any complaint concerning the absence of a Rule 121 colloquy, and any concomitant complaint that the absence of the colloquy, rather than appellee's own recalcitrance, operated to "deprive" him of counsel. For purposes of this appeal, however, I will not go so far in light of *Commonwealth v. Davido*, 582 Pa. 52, 868 A.2d 431 (2005). In *Davido*, the appellant claimed he had been denied his Sixth Amendment right to self-representation when the trial court denied his request to proceed *pro se* without first conducting a colloquy. The Commonwealth argued that the issue should have been raised as an ineffectiveness claim because the appellant was represented by standby counsel at trial and counsel failed to object to the lack of a colloquy. However, over the disagreement of this author, a majority of the *Davido* Court held that the claim was "properly addressed as the error of the trial court, since Rule 121 of the Pennsylvania Rules of Criminal Procedure [set] forth the procedure a judge must follow to determine whether the waiver of counsel was made knowingly, intelligently, and voluntarily." *Id.* at 437. Thus, we determined that "it is up to the trial court, not

counsel, to ensure that a colloquy is performed if the defendant has invoked his right to self-representation." *Id.* at 437–38. Of course, *Davido* is not on all-fours with the forfeiture situation *sub judice*, but, it is enough not to press the waiver issue.

Appellee's failure to object at trial, however, is directly relevant to his waiver argument here because it would be bizarre to overlook appellee's trial-level failure to object, and then fault the Commonwealth for failing to rebut the objection never made by appellee. Thus, the very fact that appellee was permitted to pursue the no-colloquy complaint for the first time on appeal obviously eviscerates appellee's present claim that the Commonwealth waived its forfeiture argument—an argument which directly rebuts appellee's Rule 121 complaint raised on appeal—by failing to raise it in the trial court. Additionally, while appellee insists that the Commonwealth should have argued the doctrine of forfeiture of counsel at the trial court level, it is unclear how the Commonwealth was supposed to have done so. At trial, appellee, who clearly could afford counsel, proceeded without counsel and without objection. A defendant has as strong a constitutional right to self-representation as he does to counsel. *See Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1334–1335 (1995). The Commonwealth is not obliged to rescue a non-indigent defendant from his own perilous decisions. I would decline to place the burden of prescience on the Commonwealth. Because the Commonwealth timely raised its forfeiture argument in direct response to appellee's belated complaint first raised on appeal concerning his waiver of counsel and the absence of a colloquy, there has been no waiver by the Commonwealth.

Second, and turning to the merits, I would add the following to the Majority's analysis. In the counsel denial/forfeiture area, there is obviously a difference between an indigent defendant desiring self-representation and a defendant with the means to retain counsel. Where, as occurred in the case *sub judice*, the defendant has the means to retain counsel, and

is instructed that he is ineligible for appointment of counsel, the primary burden is on the defendant to exercise this right. If the defendant fails to do so, he may forfeit his right to be represented at trial notwithstanding his most vehement assertions that he does not wish to proceed *pro se*. *See, e.g. United States v. Thomas*, 357 F.3d 357, 363–64 (C.A.3 (Pa.)2004); *Commonwealth v. Coleman*, 905 A.2d 1003, 1008 (Pa.Super.2006); *Commonwealth v. Wentz*, 280 Pa.Super. 427, 421 A.2d 796, 800 (1980). The notion, accepted by the Superior Court majority below, that a trial court somehow "denies" a non-indigent defendant his right to counsel by failing to offer a waiver colloquy is a misperception. This analysis elevates the rule-based colloquy over the constitutional right at issue. "A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional right .... the colloquy does not share the same status as the right itself." *Commonwealth v. Mallory*, 596 Pa. 172, 941 A.2d 686, 697(2008) (discussing absence of waiver colloquy in context of defendant's waiver of jury trial), *cert. denied* —— U.S. ——, 129 S.Ct. 257, 172 L.Ed.2d 146 (2008). The "denial" of counsel that results when a defendant has the means to afford counsel but refuses to secure counsel, despite being told the burden is on him to secure counsel, is at the defendant's own hands.

In this case, it is clear from the record that the trial court informed appellee that he would be going to trial on the listed date "with or without counsel" on several occasions. Thus, the trial court informed appellee in July that "we'll reschedule this for September for sure, **whether you have an attorney or not. That will give you plenty of time to get one and be ready to go.**" N.T. 7/13/04, at 6 (emphasis added). In October, the trial court, after reducing appellee's bail by $20,000 precisely to ensure that he would have sufficient funds to retain another private attorney, told appellee that "I'm going to keep Mr. Trathen in as standby [counsel], **if you don't get an attorney,** to answer any questions you might have **because you're going to proceed by yourself, otherwise.**" N.T. 10/7/04, at 3 (emphasis added). These clear warnings served to bring home to appellee that the obligation

was on him to secure counsel and that the consequence would be self-representation. The fact that appellee chose to ignore the trial court's warnings and failed to secure private counsel clearly supports a finding of forfeiture. I do not believe that the absence of a colloquy in the face of a non-indigent defendant's unexcused refusal to secure counsel, despite ample opportunity to do so, can be said to operate as a state-sponsored "denial" of the right to counsel. Constitutional law is not so paternalistic, and criminal defendants, like all other litigants, may fairly be charged with responsibility for the consequences of their actions.

Finally, and notwithstanding that I firmly believe appellee is not entitled to relief, I believe that it would be better if trial judges conducted a Rule 121–style colloquy on the record even in cases of forfeiture of counsel, so as to avoid the inevitable case-specific litigation that will follow in circumstances like those presented here. I express that preference solely as a supervisory matter; as I have explained above, I do not believe that the constitutional right to counsel requires that a non-indigent defendant be fully colloquied concerning the obvious consequences of his refusal to secure counsel.[1]

Justice TODD, dissenting.

Because I conclude Appellee's conduct was not so egregious as to support a finding that he forfeited his right to counsel, and because Appellee was not warned that he could lose his right to counsel through waiver by conduct, nor colloquied to ensure that he understood the implications of such waiver, I would affirm the Superior Court's grant of a new trial. Accordingly, I respectfully dissent.

Preliminarily, for the reasons explained by Chief Justice Castille in his concurring opinion, *see* Concurring Op. at 1180–82, I agree that the Commonwealth did not waive its forfeiture argument. Nevertheless, I do not believe the Commonwealth prevails on the merits of its argument.

1. I should add that this was a particularly curious case for the Superior Court to award relief given that the trial judge went so far as to appoint standby counsel to assist appellee, who was not entitled to any assistance at taxpayer expense.

Pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, a defendant on trial has the right to the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A defendant is entitled to waive this right in favor of self-representation; however, such waiver must be knowing and intelligent:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation,* so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Id.* at 835, 95 S.Ct. 2525 (emphasis added, citations omitted); *see also United States v. Welty,* 674 F.2d 185, 188 (3rd Cir.1982) (before a defendant is permitted to represent himself, the court "has the responsibility of ensuring that any choice of self-representation is made knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself").

As the Majority notes, in certain instances, a defendant also may be held to have forfeited his Sixth Amendment right to counsel. In *United States v. Goldberg,* the Third Circuit Court of Appeals distinguished the concepts of waiver and forfeiture: "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." 67 F.3d 1092, 1100 (3rd Cir.1995).

The types of conduct which courts have found to support a finding that a defendant forfeited his right to counsel include situations where a defendant was verbally abusive, threatened to harm his attorney, and attempted to make his attorney

engage in unethical activities, *see United States v. McLeod,* 53 F.3d 322 (11th Cir.1995), and where a defendant physically assaulted his attorney, *see United States v. Jennings,* 855 F.Supp. 1427 (M.D.Pa.1994) (defendant forfeited his right to counsel by punching his court-appointed attorney); *United States v. Leggett,* 162 F.3d 237 (3d Cir.1998) (defendant forfeited his right to counsel by assaulting his attorney). I cannot agree with the Majority that the conduct of the defendant in the case *sub judice*—failing to retain counsel, over a period of nearly nine months, despite having the financial means to do so—constitutes the type of conduct which results in forfeiture of the right to counsel.

Indeed, the court in *Goldberg* contemplated a third situation, that of waiver by conduct, which I believe more closely parallels the facts of the instant case:

> [T]here is a hybrid situation ("waiver by conduct") that combines elements of waiver and forfeiture. *Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics,* any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel. *See, e.g., United States v. Bauer,* 956 F.2d 693 (7th Cir.) (failure to hire counsel where defendant has financial ability to do so constitutes a waiver by conduct), *cert denied,* [506 U.S. 882, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992)]; *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990) (district court properly treated defendant's dilatory conduct as a request to proceed *pro se* ). Both *Bauer* and *Allen,* however, recognize that to the extent that the defendant's actions are examined under the doctrine of "waiver," *there can be no valid waiver of the Sixth Amendment right to counsel unless the defendant also receives Faretta warnings. Bauer,* 956 F.2d at 695; *Allen,* 895 F.2d at 1579; *see also United States v. Meeks,* 987 F.2d 575 (9th Cir.), *cert. denied,* [510 U.S. 919, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993)].

67 F.3d at 1100 (emphasis added).

Thus, there can be no valid waiver by conduct in the absence of a warning to the defendant that he will lose his

right to counsel if he continues to engage in dilatory conduct. *Id.* at 1101 ("a 'waiver by conduct' requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se* ") (citing *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (holding that a defendant can lose his Sixth Amendment right to be present at trial if, after he has been warned by the judge that he will be removed, he continues his disruptive behavior)).

Furthermore, *Goldberg* holds that a court, prior to finding waiver by conduct, must adhere to the requirements of *Faretta, supra,* and *Welty, supra,* and engage in a colloquy with the defendant to insure he understands the implications of the loss of right to counsel. In rejecting the government's argument that Goldberg had waived his right to counsel by conduct, the Third Circuit Court of Appeals stated:

> any claim that Goldberg waived his right to counsel by conduct is precluded by the government's concession that the district court failed to inform Goldberg of the risks of self-representation in accordance with *Faretta* and *Welty.* Thus, even though there may be conduct dilatory enough to constitute a waiver by conduct but insufficient to support a pure forfeiture, *compare Bauer,* 956 F.2d at 693[,] with *McLeod,* 53 F.3d 322, we need not determine whether Goldberg's conduct in this case amounted to a waiver by conduct. The record clearly establishes that the district court took no affirmative step to ensure that Goldberg "truly appreciate[d] the dangers and disadvantages of self-representation." *Welty,* 674 F.2d at 188.

*Goldberg,* 67 F.3d at 1102–03.

Although, as the Chief Justice states in his concurring opinion, a waiver colloquy is not itself a constitutional right, Concurring Op. at 1182 (citing *Commonwealth v. Mallory,* 596 Pa. 172, 941 A.2d 686 (Pa.2008)), this Court nevertheless routinely requires a colloquy as a means to insure that a defendant's waiver of the underlying constitutional right is knowing, voluntary and intelligent. Indeed, Rule 121 of the Pennsylvania Rules of Criminal Procedure requires the trial court to conduct an on-the-record colloquy to determine

"whether the defendant understands the full impact and consequences of his or her waiver of the right to counsel, but is nevertheless willing to waive that right." Pa.R.Crim.P. 121, Comment. Rule 620 requires an on-the-record colloquy where a defendant desires to waive his constitutional right to a jury trial, and Rule 590(A)(2) requires the court to conduct an on-the-record inquiry of a defendant to insure that a guilty plea or plea of *nolo contendere* is knowingly and understandingly tendered. *See also Commonwealth v. Vega*, 553 Pa. 255, 719 A.2d 227 (1998) (plurality) (requirements for a knowing and intelligent waiver of a defendant's presence at trial under Pa.R.Crim.P 602 include a full, on-the-record colloquy concerning the consequences of forfeiture of the defendant's right to be present). As this Court stated in *Commonwealth v. Myrick*,

> All of these formal requirements for a waiver are intended to assure one thing—that the decision to waive these rights is the informed and voluntary act of the defendant and can be shown to be such by reference to the record. So long as there is an indication, on the record, that the waiver is the informed and voluntary decision of the defendant, it will be accorded prima facie validity. Absent this record indication of validity, the waiver will be ineffective.

468 Pa. 155, 160, 360 A.2d 598, 600 (1976).

Thus, the duty of the trial court to ascertain whether a defendant's waiver of a constitutional right is knowing and intelligent is clear. I conclude this requirement prevails whether a defendant explicitly seeks to waive the right to counsel, or by his conduct suggests the same intention. Regardless of how a defendant's intention is manifested, a colloquy is the only way to determine whether a defendant understands the risks and implications of waiver of his right to counsel. Accordingly, except in those cases where the defendant's conduct is so egregious as to constitute forfeiture, I would hold that a colloquy is required before the defendant is held to have waived his right to counsel.

With regard to the instant case, a review of the record reveals that the trial court at no time warned Appellee he

might lose his constitutional right to counsel if he continued in failing to retain private counsel. Chief Justice Castille notes that, on two occasions, the trial court "informed [A]ppellee that he would be going to trial on the listed date 'with or without counsel.'" Concurring Op. at 200, 971 A.2d at 1182. The Chief Justice concludes "[t]hese clear warnings served to bring home to appellee that the obligation was on him to secure counsel and that the consequence would be self-representation." *Id.* at 1183. I cannot agree that a trial court's statement to a defendant that trial will proceed on a certain day whether or not the defendant is represented by counsel is the equivalent of a warning that the defendant is in danger of waiving his constitutional right to counsel entirely as a result of his failure to retain counsel.[1] In my view, the trial court's failure to expressly warn Appellee that he could lose his right to counsel by virtue of his conduct is alone sufficient to preclude a finding of waiver of counsel by conduct.

Nevertheless, even if the statements referred to by the Chief Justice in his concurring opinion could be considered a sufficient warning to Appellee that he was in danger of losing his constitutional right to counsel, a determination that Appellee did, in fact, waive his right to counsel by conduct is precluded by the trial court's failure to take the "affirmative step" of a colloquy to insure that Appellee fully appreciated the risks of self-representation. *See Goldberg*, 67 F.3d at 1102–03.[2] Indeed, I believe a colloquy was especially crucial

1. The Chief Justice also concludes "[t]he fact that appellee chose to ignore the trial court's warnings and failed to secure private counsel clearly supports a finding of forfeiture." Concurring Op. at 201, 971 A.2d at 1183. As discussed above, I do not believe that Appellee's conduct was of the type that would justify a finding of forfeiture of right to counsel. Moreover, warnings are not a prerequisite to a finding of forfeiture.

2. To the extent the Majority cites *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984), for the proposition that a defendant who insists on private counsel but fails to take any steps to retain counsel may be deemed to have waived the right to have counsel of his or her choice, I believe such reliance is misplaced. In that case, Szuchon repeatedly indicated that he would retain private counsel, but failed to do so. One week before his scheduled trial, Szuchon agreed to be represented by court-appointed counsel, but against counsel's advice, refused to waive his speedy trial rights to allow counsel more time to

in the instant case, as a review of the record suggests to me that Appellee may not fully have understood the consequences of his actions: one of Appellee's original attorneys had reservations about Appellee's mental state and believed that a psychiatric examination was warranted. *See* Commonwealth's Brief at 34 ("Attorney Marsilio stated that 'I found his behavior and thought processes paranoid and delusional.' ").

As I do not believe Lucarelli's conduct was of the type that would support a finding that he forfeited his right to counsel, and because Lucarelli was not warned that he could lose his right to counsel through waiver by conduct, I would affirm the Superior Court's grant of a new trial on the basis that Lucarelli was denied his right to counsel. For these reasons, I dissent.

Justice SAYLOR joins this dissenting opinion.

prepare. The trial court conducted a colloquy and explained the ramifications of his refusal to waive his speedy trial rights. Following his conviction, Szuchon argued on appeal, *inter alia,* that the short period of time court-appointed counsel had to prepare resulted in a *per se* violation of his right to effective representation of counsel. In rejecting Szuchon's ineffectiveness claim, we acknowledged *Faretta, supra,* and noted:

> the record makes it exceedingly clear that appellant knowingly and intelligently, and with full explanation and understanding of the consequences, insisted on his right to be tried, under Rule 1100, within 180 days of his arrest, thus deliberately forcing trial to commence on October 12, 1981. Being fully aware that court appointed counsel had only a limited time for preparation of his defense, appellant cannot be heard to bemoan the effectiveness of counsels' representation due to lack of preparation.

*Id.* at 251, 484 A.2d at 1377. Thus, *Szuchon* is not a waiver of counsel case because Szuchon chose to go to trial with appointed counsel. Moreover, *Szuchon* confirms the importance of a colloquy with respect to the waiver of certain constitutional rights: the court rejected Szuchon's ineffectiveness claim because the trial court conducted a thorough colloquy to insure Szuchon understood the consequences of his refusal to waive his speedy trial rights.