J-S20033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL L. STOVALL, | |
| Appellant | No. 1329 WDA 2015 |

Appeal from the Judgment of Sentence July 20, 2015
in the Court of Common Pleas of Erie County
Criminal Division at No.: CP-25-CR-0003162-2013

BEFORE:  PANELLA, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED MAY 6, 2016**

Appellant, Daniel L. Stovall, appeals from the judgment of sentence imposed following his jury conviction of driving under the influence (DUI), general impairment, 75 Pa.C.S.A. § 3802(a)(1).  We affirm.

The relevant facts and procedural history of this case are as follows. On September 14, 2013, at 2:28 a.m., Patrolman Bruce E. Kosko of the Erie Police Department responded to a report of an accident involving a vehicle crash into a house.  When he arrived at the scene, he observed a Cadillac with damage to its rear resting against a house.  Patrolman Kosko interviewed a witness who reported that he observed a dark-colored sedan driving in reverse at a high rate of speed strike the rear of the Cadillac.  The

_____

[*] Retired Senior Judge assigned to the Superior Court.

Cadillac rolled for a distance and ran into the house; the sedan fled the scene. Patrolman Kosko also interviewed the owner of the Cadillac, who indicated that he did not park his vehicle in its present location and that there was no damage to it when he parked it. Based on this information, at 2:45 a.m., Patrolman Kosko issued a radio dispatch report for police to be on the lookout for a dark-colored sedan, possibly with heavy rear-end damage.

Approximately one hour later, Lieutenant Mark Sanders observed Appellant's vehicle, a silver sedan with heavy rear-end damage, traveling on a street located approximately seven blocks from the scene of the collision. He stopped Appellant's vehicle and radioed for backup. Appellant exhibited signs of intoxication including slurred speech and an odor of alcohol; he could not stand on his own, and immediately failed a field sobriety test. Police arrested Appellant and called an ambulance for his front seat passenger, who was unresponsive and nearly unconscious. Although Appellant initially consented to a blood draw, police deemed it unsafe to administer after he became belligerent at the hospital.

On February 4, 2014, Appellant filed a motion to suppress evidence, claiming that the stop of his vehicle was illegal. The court entered an opinion and order denying the motion on April 7, 2014, following a hearing.

On the morning of trial, June 9, 2015, Appellant's appointed counsel of record filed a motion seeking *pro hac vice* admission of Robert F. DiCello, Esq., a member of the Ohio bar,[1] to represent Appellant in this case.[2] The trial court denied the motion and ordered Appellant's counsel of record to represent him at trial. However, it permitted Attorney DiCello to participate in Appellant's defense in an advisory capacity.

Appellant proceeded to trial and the jury found him guilty of DUI on June 10, 2015. On July 20, 2015, with the benefit of a pre-sentence investigation report (PSI),[3] the trial court sentenced Appellant to a term of not less than fourteen nor more than twenty-eight months' incarceration, a sentence in the standard range of the sentencing guidelines. The court denied Appellant's timely post-sentence motion on July 30, 2015. This timely appeal followed.[4]

Appellant presents the following issues for our review:

_____

[1] Appellant resides in Ohio. (**See** N.T. Suppression Hearing, 4/03/14, at 3).

[2] **See** Pennsylvania Bar Admission Rule 301(b) (requiring, *inter alia*, that motions for *pro hac vice* admission be filed at least three days prior to appearance before court).

[3] The PSI revealed a previous DUI conviction in New York in 2006 and an operating a vehicle while intoxicated (OVI) conviction in Ohio in September 2012. (**See** Trial Court Opinion, 10/12/15, at 7; Appellant's Brief, at 9).

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on September 11, 2015. The court filed an opinion on October 12, 2015. **See** Pa.R.A.P. 1925.

[1.] [Whether] the trial court erred in denying [Appellant's] suppression motion when the circumstances surrounding the initial police traffic stop did not rise to the level of reasonable suspicion[?]

[2.] [Whether] the trial court erred in precluding [Appellant] from retaining private counsel from outside Pennsylvania, denying his right to counsel[?]

[3.] [Whether] the sentence in this case was manifestly excessive and clearly unreasonable when the court sentenced [Appellant] as a third conviction in the last ten years when the other conviction was not sufficiently established as a matter of law[?]

(Appellant's Brief, at i) (most capitalization omitted).[5]

In his first issue, Appellant argues that the trial court erred in determining that the investigatory stop was supported by reasonable suspicion. (*See id.* at 5-8). Specifically, he claims that Lieutenant Sanders lacked reasonable suspicion because his silver sedan did not match the reported description of the dark-colored sedan involved in the collision. (*See id.* at 7). Appellant further maintains that Lieutenant Sanders lacked a

_____

[5] We take Appellant's issues from the brief's table of contents. The brief appears to be missing pages and does not include a statement of the questions involved as required by our rules of appellate procedure. *See* Pa.R.A.P. 2116(a). Although we could find waiver based on this defect, *see* Pa.R.A.P. 2101, we decline to do so where the three issues Appellant lists in the table of contents correspond to those discussed in the brief, and were included in his Rule 1925(b) statement. (*See* Appellant's Brief, at i, 5, 8-9; Rule 1925(b) Statement, 9/11/15); *see also Commonwealth v. Ryan*, 909 A.2d 839, 841 (Pa. Super. 2006) (declining to find waiver despite Rule 2116 violation).

legal cause to initiate the stop because he had not observed any illegal activity. (*See id.* at 7-8). This issue lacks merit.

Our standard of review is as follows:

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing rulings of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Leonard*, 951 A.2d 393, 396 (Pa. Super. 2008) (citation omitted).

> [O]ur courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a particular search or seizure conforms to the requirements of U.S. CONST. amend IV and P.A. CONST. art. I, § 8.
>
> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013), *appeal denied*, 87 A.3d 320 (Pa. 2014) (case citation omitted).

> . . . [P]rior to stopping a citizen for investigative purposes, a police officer must possess at least reasonable suspicion of that individual's involvement in illegal activity based on the

totality of the circumstances as known to the officer. Nevertheless,

> [r]easonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.

*Commonwealth v. Howard*, 64 A.3d 1082, 1088 (Pa. Super. 2013), *appeal denied*, 74 A.3d 118 (Pa. 2013) (citations and quotation marks omitted).

Furthermore, "[a] finding of reasonable suspicion does not demand a meticulously accurate appraisal of the facts." *Commonwealth v. Muhammed*, 992 A.2d 897, 901 (Pa. Super. 2010) (citation omitted). "Indeed, even stops based on factual mistakes generally are constitutional if the mistake is objectively reasonable." *Id.* (citation omitted).

The record in the instant case reflects that, at approximately 2:45 a.m., Lieutenant Sanders received a radio dispatch report of a hit and run accident, with a directive to be on the lookout for a dark-colored sedan with heavy rear-end damage that had pushed another vehicle into a house. (*See* N.T. Suppression Hearing, 4/03/14, at 11-12, 18, 20; *see also* N.T. Trial, 6/09/15, at 46). Within an hour of the report, he observed Appellant's silver

car, which had "substantial" rear-end damage, just seven blocks from the collision site. (N.T. Suppression Hearing, 4/03/14, at 19; *see id.* at 21-22, 26). He then initiated the stop of Appellant's vehicle based on his belief that it was involved in the hit and run accident. (*See id.* at 21, 26).

Based on the totality of the circumstances, we conclude that Lieutenant Sanders articulated the requisite reasonable suspicion to stop Appellant's vehicle, and that any discrepancy he made regarding its color was objectively reasonable given the heavy rear-end damage and close proximity to the collision site. *See Howard*, *supra* at 1088; *Muhammed*, *supra* at 901. Therefore, the trial court properly denied the motion to suppress evidence. *See Leonard*, *supra* at 396. Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the trial court violated his Sixth Amendment right to counsel during his jury trial. (*See* Appellant's Brief, at 8-9). Specifically, he argues that the court denied him the right to counsel of his choice when it refused to grant *pro hac vice* admission to his privately retained counsel from Ohio, Attorney DiCello. (*See id.*). We disagree.

Preliminarily, we observe that because this issue presents a question of law, we apply a *de novo* standard of review. *See Commonwealth v. Lucarelli*, 971 A.2d 1173, 1178 (Pa. 2009).

The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the

Assistance of Counsel for his defence." U.S. Const., amend. VI. "[T]he core purpose of the [Sixth Amendment] counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." **Commonwealth v. Padilla**, 80 A.3d 1238, 1252 (Pa. 2013), *cert. denied*, 134 S. Ct. 2725 (2014) (citations omitted). "As a general rule, a conviction will not be vacated for a violation of the Sixth Amendment right to counsel in the absence of a showing that the reliability of the defendant's trial was undermined." **Id.** at 1253 (citations omitted).

> The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is not absolute. Rather, the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

**Lucarelli**, **supra** at 1178-79 (citations omitted).

Here, despite Appellant's apparently existing attorney-client relationship with Ohio attorney DiCello, he did not file his motion seeking permission for Attorney DiCello to represent him at trial until the **morning of trial**. (**See** Motion for *pro hac vice* admission of Robert F. DiCello,

6/09/15, at 1 ¶ 3); *see also* Pa.B.A.R. 301(b)(2)(ii) (requiring motion to be filed by sponsor at least three days prior to court appearance). At this point, appointed counsel from the public defender's office had been Appellant's attorney of record and active in this case for eight months, since October 2014; prior to this, Appellant was represented by another attorney from the public defender's office. The trial court found that the motion was untimely and that Attorney DiCello failed to comply with other applicable procedural requirements for out-of-state attorneys seeking *pro hac vice* admission. (*See* N.T. Trial, 6/09/15, at 3-5). However, it did permit Attorney DiCello to assist in Appellant's defense during trial in an advisory capacity. (*See id.* at 7-8; Appellant's Brief, at 3).

Upon review, we conclude that the trial court did not violate Appellant's constitutional right to counsel by denying his eleventh-hour request to permit an attorney who is not licensed to practice law in Pennsylvania to try his case, instead of his attorney of record. *See Lucarelli*, *supra* at 1178-79. The record reflects that the trial court properly declined the non-compliant application and reasonably restricted Appellant's right to choose his own counsel; Appellant has not shown that the court's ruling undermined the reliability of his trial in any way. *See Padilla*, *supra* at 1253. Therefore, Appellant's second issue does not merit relief.

In his third issue, Appellant challenges the legality of his sentence. (*See* Appellant's Brief, at 9). Specifically, he avers that the trial court

- 9 -

erroneously treated the instant conviction as his third DUI offense in the last the ten years. (**See id.**). Although he acknowledges his previous DUI/OVI convictions in New York in 2006 and in Ohio in 2012, he nevertheless maintains, without citation to authority, that "because the Ohio offense was treated as a first offense by the Ohio Courts, the Pennsylvania offense should be a second offense." (**Id.**). This issue does not merit relief.

> A challenge to the legality of a sentence . . . may be entertained as long as the reviewing court has jurisdiction. It is also well-established that if no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. Issues relating to the legality of a sentence are questions of law[.] . . . Our standard of review over such questions is *de novo* and our scope of review is plenary.

**Commonwealth v. Batts**, 125 A.3d 33, 45-46 (Pa. Super. 2015) (citation omitted).

Preliminarily, we observe that Appellant's single-paragraph argument on this issue is underdeveloped; he has failed to cite or discuss **any** legal authority to support his position. **See** Pa.R.A.P. 2119(a)-(b). However, because we have jurisdiction over this matter and an illegal sentence must be vacated, we will review his claim. **See Batts**, **supra** at 45-46.

Section 3806 of the Vehicle Code, titled "Prior offenses" provides, in pertinent part:

> **(b) Repeat offenses within ten years.**—The calculation of prior offenses for purposes of sections 1553(d.2) (relating to occupational limited license), 3803 (relating to grading) and 3804 (relating to penalties) shall include any conviction, whether or not judgment of sentence has been imposed for the violation,

adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition within the ten years before the sentencing on the present violation for any of the following:

(1) an offense under section 3802 [(relating to DUI)];

(2) an offense under former section 3731;

(3) **an offense substantially similar to an offense under paragraph (1) or (2) in another jurisdiction**; or

(4) any combination of the offenses set forth in paragraph (1), (2) or (3).

75 Pa.C.S.A. § 3806(b) (emphasis added). Thus, the plain language of the statute contemplates including convictions substantially similar to DUI in other jurisdictions in calculating prior offenses. *See id.* Therefore, the trial court properly treated Appellant's DUI as a third offense.

Moreover, Appellant's assertion that the instant DUI conviction was erroneously treated as a third offense, (*see* Appellant's Brief, at 9), is directly contradictory to his position at the sentencing hearing, where defense counsel acknowledged Appellant's previous Ohio and New York convictions, and readily conceded "This is a third offense, and my client's recognizing this[.]" (N.T. Sentencing, 7/20/15, at 5). The trial court then imposed sentence within the standard range of the sentencing guidelines. (*See id.* at 10-11; *see also* Guideline Sentence Form, 7/21/15, at 1). After review of the record, we conclude that Appellant's argument that his

sentence is illegal is specious. Therefore, his third issue does not merit relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/6/2016