J-S11021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRICIA J. MEZZACAPPA | : | |
| | : | |
| Appellant | : | No. 1834 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 21, 2021
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0002873-2019

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED JULY 06, 2023**

Tricia J. Mezzacappa appeals *pro se* from the judgment of sentence entered after a jury convicted her of one count of false reports – fictitious report to law enforcement, graded as a misdemeanor of the third degree. 18 Pa.C.S.A. § 4906(b)(1). She argues on appeal that the trial court violated her right to counsel. We affirm.

The trial court summarized the underlying facts as follows:

> [T]he alleged criminal event occurred during the evening hours on February 11, 2019, when the Pennsylvania State Police were dispatched to [Mezzacappa's] neighborhood for a report from Gregory Bealer and Charose Krock, parents of a newborn child. The Bealer/Krock family lived across the street from [Mezzacappa]. It was reported that earlier that evening, Mr. Bealer had entered his car to drive to the supermarket to buy formula for their child. After he entered his car, [Mezzacappa] approached his car and banged on his window, yelling at him about his car's exhaust and telling Mr. Bealer that he should move out of the neighborhood. After Mr. Bealer drove away from the area, it was reported

that [Mezzacappa] then went to the Bealer/Krock home and banged on the front door. [Mezzacappa] informed Ms. Krock that Mr. Bealer had to get the " F" out of the neighborhood. When the Trooper went to speak to [Mezzacappa], [Mezzacappa] relayed another story. [Mezzacappa] reported that earlier that evening, as [Mezzacappa] was exiting her car parked in front of her home, her neighbor (described as a black man residing across the street from her home) approached her from behind and placed a gun to her head. [Mezzacappa] further reported that she reacted to the alleged assault by pulling out her own gun and firing either at the assailant or firing a warning shot which reportedly caused the neighbor to flee back into his house. While [Mezzacappa] did not name her alleged assailant, [Mezzacappa] did point out Mr. Bealer's home across the street, as the home her assailant ran into, and claimed she recognized her assailant as residing in that home.

After an investigation, the State Police concluded that [Mezzacappa's] report was false and filed charges.

Trial Court Opinion, filed Apr. 11, 2022, at 1-2 ("Trial Ct. Op.").[1]

Mezzacappa hired John Waldron as her private attorney. The relationship deteriorated such that Mezzacappa refused to speak to, or be in the presence of, Waldron. *Id.* at 2. In October 2020, Waldron filed a motion to withdraw. At a hearing on the motion, Waldron appeared in the courtroom, while Mezzacappa remained outside. Mezzacappa "announced to [the] Court Officers, after she expressed various insults about Mr. Waldron, that she refused to be in the same room with him." *Id.* at 3.[2] The court granted the

---

[1] For a complete recitation of the factual and procedural history of this case, see the Trial Ct. Op. at 2-18.

[2] The transcripts from the October 2020 and November 2020 hearings are not in the record. Mezzacappa does not dispute the trial court's summary of the hearings.

motion, "as it was clear that [Mezzacappa] and Mr. Waldron did not have a productive attorney/client relationship." *Id.*

After Waldron left the courtroom, Mezzacappa entered, and the court conducted a status conference and set dates for resolving the case. *Id.* The court suggested Mezzacappa hire new counsel or apply for the appointment of a public defender. *Id.*

In November 2020, Mezzacappa filed a motion for court-appointed counsel, stating that the Public Defender's Office had rejected her application for counsel. Motion for Court to Appoint Counsel, Nov. 5, 2020. The court consulted with the Court Administration, which informed the court that it could not appoint counsel or fund a request for free counsel and therefore Mezzacappa would be required to hire private counsel. Tr. Ct. Op. at 3. At a hearing on the motion, the court stated that if Mezzacappa did not have counsel, it would appoint stand-by counsel to assist at trial. *Id.* The court issued an order denying the motion for appointment of counsel, reasoning that her motion was not verified and did not contain a verified financial statement establishing her indigence or lack of financial resources to employ counsel. Order, Nov. 18, 2020, at 2.[3]

_____

[3] Pennsylvania Rule of Criminal Procedure 123 governs motions for the appointment of counsel and provides:

> A defendant who requests assignment of counsel in a court case shall file a signed and verified application for assignment of counsel, which shall set forth the facts

*(Footnote Continued Next Page)*

In its 1925(a) opinion, the court pointed out that "at various times and in various letters and filings to the court, [Mezzacappa] has claimed that she ha[d] attempted to hire counsel, but due to the celebrity of her case, she was unable to do so." Tr. Ct. Op. at 4. It noted that Mezzacappa "claimed that various lawyers gave competing reasons for refusing to represent her including fear of a local blogger who had influence with the justice system, the influence and antagonism against her by local politicians, concerns of retaliation by the District Attorney, and concerns of retaliation by th[e trial c]ourt." *Id.* In January 2021, the court appointed Alex Karam, Esquire as stand-by counsel, who was present at trial and sentencing.

The jury found Mezzacappa guilty of false reports to law enforcement. In April 2021, the court sentenced Mezzacappa to one year of probation. Two days after sentencing, the Probation Department filed a petition to review/revoke probation. The court held a *Gagnon I*[4] hearing and found probable cause that Mezzacappa had violated probation.[5] In May 2021, the court revoked probation and sentenced Mezzacappa to time served to 12 months' imprisonment. The trial court granted Mezzacappa the right to appeal

---

> showing that the defendant is without financial resources or is otherwise unable to employ counsel.

Pa.R.Crim.P. 123.

[4] *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

[5] Because Mezzacappa was incarcerated at this time, the court appointed counsel.

the April 2021 judgment of sentence *nunc pro tunc*. Mezzacappa filed a notice of appeal.[6, 7]

Mezzacappa raises the following issues on appeal:

> 1. Were [Mezzacappa's] rights under Pa. R.C.P. 704 violated where the trial court failed to appoint counsel at time of sentencing and resentencing, where the trial court failed to allow [Mezzacappa] the opportunity to dispute PSI reports prior to sentencing and resentencing, where the trial court failed to keep PSI reports confidential as required by reading the confidential reports into the record?
>
> 2. Were [Mezzacappa's] rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution violated where no counsel was appointed to represent [Mezzacappa] prior to trial, during trial, at sentencing, and at resentencing, and during the appeal, without notice to herself, without a hearing to dispute PSI reports, and without being notified or present at ***Grazier*** hearing?

Mezzacappa's Br. at 6.

Mezzacappa argues the trial court violated her right to counsel during the trial and sentencing such that the verdict should be vacated, and the case

---

[6] After she was incarcerated, the court appointed Mezzacappa four different attorneys as her counsel. She refused to work with each, and all were permitted to withdraw. In February 2022, the court granted an additional two weeks to perfect the appeal, including the filing of a 1925(b) statement, and Mezzacappa filed the statement within that two-week period. We therefore find she preserved her issues for appeal.

[7] The trial court found Mezzacappa waived her right to counsel on appeal. It noted that Mezzacappa failed to appear at the hearing held pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998), and that she had been appointed four different counsel on appeal, but was unsatisfied with each counsel.

remanded for a new trial. She argues she did not voluntarily represent herself, objected to her lack of counsel throughout the proceedings, and did not waive her right to counsel. She points to the portions of the transcript where she stated she was representing herself against her wishes.[8]

"The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense." *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1178 (Pa. 2009) (citation omitted). "Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel." *Id.* "However, the constitutional right to counsel of one's own choice is not absolute." *Id.* (citation omitted). The Pennsylvania Supreme Court has reasoned that "the right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice." *Id.* Accordingly, although "defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice." *Id.* at 1179.

_____

[8] In her appellate brief, Mezzacappa appears to challenge the lack of counsel at the trial and sentencing and at the May 2021 re-sentencing. However, appointed counsel represented her at the re-sentencing and the court granted *nunc pro tunc* relief only as to the April 2021 judgment of sentence. Order, filed Aug. 19, 2021. We therefore will not address any claim raised as to the May 2021 re-sentencing.

A defendant therefore forfeits his or her right to counsel of his or her choice "by insisting on particular counsel who is unavailable or by insisting on private counsel but failing to take any steps to retain an attorney." *Id.* (citing *Commonwealth v. Szuchon*, 484 A.2d 1365, 1376 (Pa. 1984)). In such a case, *i.e.,* where a defendant forfeited his or her right to counsel, the court need not conduct a waiver colloquy. *Id.* Whether an appellant forfeited his right to counsel is a question of law over which our standard of review is *de novo* and our scope of review is plenary. *Id.* at 1178.

In *Lucarelli*, the Pennsylvania Supreme Court held the defendant forfeited his right to counsel where he had more than eight months to prepare for trial, had the financial ability to pay for counsel, had retained counsel on several occasions, who were permitted to withdraw when the relationship deteriorated, and had been given access to $20,000 five weeks prior to trial for the purpose of retaining counsel. 971 A.2d at 1180. The Court explained that the defendant "simply decided not to retain private counsel because he did not wish to spend the money." *Id.* It concluded that the defendant's "pattern of behavior constituted extremely dilatory conduct, sufficient to result in the forfeiture of his right to counsel." *Id.*

Here, we conclude that Mezzacappa forfeited her right to counsel. She was not entitled to the appointment of counsel, as she was found to have the ability to pay for counsel and she did not establish that this finding was incorrect. Further, the court informed her on multiple occasions that she would have to find her own counsel, and she failed to do so. *See Lucarelli*, 971 A.2d

at 1180; ***Commonwealth v. Wentz***, 421 A.2d 796, 800 (Pa.Super. 1980) (*en banc*) (holding "a criminal defendant who has been duly notified of the date of his trial, and who has been advised to obtain counsel to represent him and who, nevertheless, appears in court on the scheduled date without counsel and with no reasonable excuse for the lack thereof and no concrete plans for the obtaining of counsel has waived his right to counsel"). The court did not err.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/6/2023*