J-S66009-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| EUGENE DOUGLAS MANNING | |
| Appellant | No. 2003 MDA 2015 |

Appeal from the Judgment of Sentence May 15, 2013
In the Court of Common Pleas of Franklin County
Criminal Division at No(s): CP-28-CR-0001169-2012
CP-28-CR-0001173-2012
CP-28-CR-0001674-2011

BEFORE:  BOWES, PANELLA AND JENKINS, JJ.

MEMORANDUM BY BOWES, J.:          **FILED NOVEMBER 29, 2016**

Eugene Douglas Manning appeals *pro se* from the judgment of sentence of seventy-two to 144 months imprisonment that was imposed after he was convicted of two counts of stalking and twenty-eight counts of harassment by anonymous communication.  We affirm.

This appeal involves three criminal actions that were consolidated for purposes of trial.  At 1674 of 2011, Appellant was charged with stalking Pamela Ross.  Appellant was arrested for that offense on September 7, 2011, and, after his September 13, 2011 release on bail, Appellant did not contact Ms. Ross again until April 30, 2012, when he called her twice.  On May 1, 2012, and May 2, 2012, Appellant sent the victim numerous text

messages. These 2012 actions resulted in an additional stalking charge leveled against him at criminal case number 1169 of 2012, and, at criminal action number 1173 of 2012, twenty-eight counts of harassment by anonymous communication.

The facts underlying Appellant's convictions follow. In June, 2011, Appellant went to the Center for Dermatology (the "Center") in Chambersburg, Pennsylvania, due to the existence of lumps on his back. He was seen by Ms. Ross, who was a board-certified physician's assistant. On July 21, 2011, Ms. Ross removed a cyst from Appellant's back using local anesthetic. On the discharge form, Appellant was told to call Ms. Ross' cell phone number in the event that complications arose after the out-patient surgery, and he received an appointment to have sutures removed on August 4, 2011. Ms. Ross's cell phone was utilized on the Center form because the business did not have an answering service at that time. That procedure was altered due to Appellant's subsequent behavior toward Ms. Ross.

After another office employee removed his sutures on August 2, 2011, Ms. Ross examined the surgical site to ensure that the wound was healed. The June, July, and August office visits were the extent of Ms. Ross' direct contact with Appellant. In August 2011, Appellant began to send letters nearly every day to the Center, and they were addressed to Ms. Ross. In one, Appellant called the victim "a true life queen" and said that her

"husband must wait at the door for [her] to get home." N.T. Trial, 3/12/13, at 50. After she received the second letter, Ms. Ross advised her office manager about the situation, and the Center notified Appellant that he was discharged as a patient and told him not to contact Ms. Ross "in any way." *Id*. at 55.

Appellant continued to send Ms. Ross letters at the Center and also mailed her a twig and a CD. The letters, introduced as exhibits, were rambling, strange, and indicated that Appellant was in love with Ms. Ross and believed that he and Ms. Ross were involved in a relationship with each other. The communications rendered the victim fearful for both her safety and that of her husband and four children.

Appellant also kept a notebook, which was recovered pursuant to a search warrant. It was titled, "Gene and his Little Pammy and a Life Lesson of What True Love really is, and how God meant us to Love. I Love you Pamela, Love your outlaw Stalker, Gene." Commonwealth's Exhibit 20 at 1 (emphasis in original). The notebook contained rambling diatribes similar to the one on the cover. For example, Appellant reported that he was madly in love with Ms. Ross, considered her his soul mate, pleaded with her to divorce her husband for him, and said that he knew that one day he and Ms. Ross would become involved in a romantic relationship.

Since Appellant did not desist in sending letters, on August 23, 2011, Ms. Ross contacted police about the situation. Two Chambersburg police

officers personally discussed the matter at length with Appellant and told him to stop contacting Ms. Ross. Instead of heeding the officers' warning, Appellant began to telephone Ms. Ross, and he left eight or nine messages on her cell phone. The victim contacted the police, who listened to the messages and verified that they were from Appellant. Based upon his behavior toward Ms. Ross in August, 2011, Appellant was arrested for stalking on September 7, 2011, and he was released on bail on September 13, 2011. One of the conditions of his release was that he have "no contact with the victim or victims in person, by mail or telephone." *Id*. at 67.

Upon his release, Appellant initially did not contact Ms. Ross, but he then defied the condition by twice telephoning her on April 30, 2012. On May 1, 2012, and May 2, 2012, Appellant sent the victim twenty-eight bizarre and rambling text messages. Appellant repeatedly asked the victim to contact him and referred to her as "baby." Commonwealth Exhibit 5. Ms. Ross called the police and contacted her cell phone provider to block calls from Appellant's phone number.

At trial, Appellant, who was proceeding *pro se*,[1] called Dr. Joanna Brady as a witness. She told the jury that, after she saw Appellant professionally as a patient, he sent her flowers and left multiple inappropriate messages on her telephone. In response to a question by

---

[1] The status of Appellant's legal representation is discussed *infra*.

Appellant about how the messages were inappropriate, Dr. Brady responded: "You would leave messages where you breathed heavily, where you threatened to kill me, where you threatened to hurt my family. You threatened to kill my husband. You sent letters that contained the same." N.T. Trial, 3/13/13, at 187-88.

After a three-day trial, a jury convicted Appellant of all counts in the three criminal actions, and he was sentenced on May 15, 2013, to seventy-two to 144 months incarceration. Appellant filed a *pro se* direct appeal, and was ordered to file a Pa.R.A.P. 1925(b) statement. He never complied with that directive. After protracted proceedings, which are described in detail *infra* as they are pertinent to the central issue involved in this appeal, the Commonwealth moved to have that appeal dismissed based upon Appellant's failure to file a Pa.R.A.P. 1925(b) statement. We dismissed the appeal on February 24, 2015. Appellant then filed a timely *pro se* PCRA petition on September 17, 2015. After a hearing, the trial court reinstated Appellant's right to a direct appeal on October 26, 2015, and this *pro se* appeal followed on November 13, 2015.

Appellant's Pa.R.A.P. 2116 Statement of Questions Involved spans eight pages and raises about twenty-six issues:

> 1. Whether it was an abuse of discertion [sic] or error of law by the trial court, and whether Mr. Manning was denied his right to counsel pursuant to the Sixth and Fourteenth Amendments of the Federal Constitution and pursuant to Article 1 section 9 of the Pennsylvania Constitution of the right to counsel by failing to

conduct the required on -the -record waiver of counsel colloquy to be certain Mr. Manning's waiver of counsel was knowing, voluntary and intelligent, pursuant to Pa.R.Crim.P. 120, 121, 122, to permit Mr. Manning to proceed pro se:

A. Throughout all pretrial critical stages of the criminal proceedings.

B. Jury selection.

C. A jury trial.

D. A jury trial for misdemeanors and felony charges which Mr. Manning faced substantial prison sentences.

E. Sentencing to imprisonment.

F. Post sentence motions stage.

2. Whether the Commonwealth of Pennsylvania criminal stalking statute and laws are unconstitutional, facially overbroad, facially vague, or were so overbroad and vague as applied to Mr. Manning's conduct, and whether the stalking statute and laws permit and or promote arbitrary and or discriminatory enforcement or were so as applied to Mr. Manning's conduct, and criminalized non criminal conduct as applied to Mr. Manning. In violation of Mr. Manning's Federal First amendment and Pennsylvania Constitution Article 1., section 7 of the right to legitimate freedom of speech ,expression, association, the freedom to think and feel privately. In violation of the Federal Ninth amendment against ex post facto laws, Federal Fourteenth amendment of due process. In violation of the Pennsylvania Constitution, Article 1 section 1. and the right to privacy, Article 1 section B against unreasonable searches and seizures and rights of privacy. In violation of Article 1 section 9 due process, in violation of Article 1 section 17 ex post facto clause.

3. Whether the sentences are illegal, unconstitutional, and whether the trial court abused its discretion or committed error of law sentencing Mr. Manning to prison for:

A. Mandatory minimum sentences.

B. Non statutory aggravating factors.

C. Aggravating factors not submitted to the factfinder, jury.

D. Resentencing Mr. Manning for 2003 -2004 cases.

E. Impermissable [sic] sentencing factors, sex crimes, constitutionally protected conduct, activity, freedom of speech, expression, association, authorized conduct, legitimate doctor-patient medical appointment, legitimate communication, non communication, non criminal conduct, activity, petitioning the courts for redress of grievances.

4. Whether it was an abuse of discretion or error of law by the trial court in charging the jury with improper jury instructions:

A. "Now ordinarily, it is not possible to prove intent" "knowledge or what someone is thinking, what purpose they have, and whether this instruction lowered the Commonwealth's burden of proof, shifting the burden onto Mr. Manning to prove innocence or non specific intent to commit stalking and harassment.

B. Submitting jury verdict slips to the jury that permitted a finding of guilt based on speculation, suspicion, conjecture, constitutionally protected conduct, proper legal, authorized activity, conduct, legitimate freedom of speech, expression, association, legitimate communication, non communication, non criminal conduct.

5. Whether it was an abuse of discretion or error of law by the trial court to permit over Mr. Manning's objections, the highly prejudicial, irrelevant, hearsay testimony by the alleged victim Mrs. Ross that her son had nightmares that a faceless Mr. Manning killed his baby sister.

6. Whether the [C]ommonwealth failed to prove each element of the crimes against Mr. Manning beyond a reasonable doubt, specific intent, non legitimate communication, and whether the evidence was insufficient to prove guilt, and whether it was an abuse of discretion or error of law by the trial court to deny Mr. Manning's motion to dismiss the charges.

7. Whether it was an abuse of discretion or error of law by the trial court to permit the Commonwealth to introduce prior bad acts from 2003, 2004, and to permit known false testimony, perjury from a witness that in 2003, 2004 Mr. Manning treatened [sic] to kill her, her husband and hurt her family. This witness was Mrs. Brady. Mr. Manning objected.

B. Whether Mr. Mannìng was illegally, unconstitutionally arrested without arrest warrants, or defective invalid arrest warrants.

9. Whether the Commonwealth of Pennsylvania Rules of Criminal Procedure 513 are unconstitutional, or were so as applied to Mr. Manning, or were the rules not properly followed as; The affiant of the police criminal complaint, probable cause affidavit for count 1674 -2011 was not required to appear in person or to swear and or affirm his statements in the affidavit in person before the issuing authority to have the complaint approved. And whether the affidavits of probable cause for counts 1674 - 2011, 1169- 2012, 1173 -2012 failed to set-forth any criminal allegations, and whether the issuing authority abandoned his nuetral [sic] and detached role in approving the complaints and or arrest warrants.

10. Whether it was an abuse of discretion or error of law by the trial court to deny Mr. Manning's motions to suppress the evidence searched and seized from the Waite residence on June. 13, 2012, denyiing [sic] Mr. Manning standing to challenge, and wheteher [sic] the search warrant lacked probable cause, was defective, overbroad, violated Mr. Manning's right's [sic] of privacy, and whether the issuing authority abandon his nuetral [sic] and detached role in issuing the warrant.

11. Whether it was an abuse of discretion or error of law by the trial court, over Mr. Manning's objections, to deny Mr. Manning his right to call witness in his favor by quashing the jury trial subpoena to Dr. Muhkerjee, a psychiatrist who could have explained the evidence searched and seized from the Waite residence, Mr. Manning's private thoughts, feelings, writings, diaries and journals.

12. Whether it was an abuse of discretion or error of law by the trial court, over Mr. Manning's objections to quash the trial subpoenas to Mrs. Ross and Dr. Epstein, and two exculpatory

eyewitnesses who could have offered substantial impeachment value testimony against Mr. Manning's accuser Mrs. Ross.

13. Whether it was an abuse of discretion or error of law by the trial court to deny Mr. Manning his right to call witnesses in his favor by quashing the trial subpoena to Mrs. Ross when the trial court told Mr. Manning he would be able to call Mrs. Ross later for questioning for his case in chief.

14. Whether it was presecutorial [sic] misconduct, overreaching by the prosecutor to permit and elicit known false testimony and perjury from a witness, Mrs. Brady regarding prior bad acts, that in 2003, 2004 Mr. Manning threatened to kill Mrs. Brady, her husband, and hurt her family.

15. Whether the Commonwealth of Pennsylvania harassment statute and laws are unconstitutional, facially overbroad, facially vagues [sic], or were so overbroad and vague as applied to Mr. Manning's counduct [sic], and whether the harassment statute and laws permit and or promote arbitrary and or discriminatory enforcement or were so as applied to Mr. Manning's conduct, and criminalize non criminal conduct as applied to Mr. Manning, as 26 counts of harassment against the Center for Dermatology, count 1173 -2012 required no victim, no testimony from anyone ,and there was no actual communication with anyone, no messages left.

Appellant's brief at 3-10.

Despite this expansive Pa.R.A.P. 2116 statement, the argument portion of Appellant's brief is actually divided into three parts: 1) pages sixteen to thirty-five are devoted to a position that he was improperly denied his right to counsel since he never was afforded a Pa.R.Crim.P. 121 colloquy at his jury trial; 2) at pages thirty-five to seventy-three, Appellant claims that the criminal stalking statute is unconstitutional as overbroad and vague; and 3) his final averment, leveled at pages seventy-three to eighty of the

brief, is that the harassment statute is unconstitutionally vague and overbroad. The only arguments that we will address are those advanced in the argument portion of Appellant's brief. ***Commonwealth v. Jackson***, 431 A.2d 944, 945 n.1 (Pa. 1981) (where issue presented in the "Statement of Questions Involved" section of defendants brief was not addressed in "the 'Argument' portion of his brief," it was waived); ***accord Commonwealth v. Jones***, 815 A.2d 598, 604 n. 3 (Pa. 2002); Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.").

Appellant first claims that he is entitled to a new trial because the trial court did not provide a waiver-of-counsel colloquy at the time of trial. Appellant's brief at 16 (Appellant was deprived of his right to counsel "as his trial counsel Brian Williams was permitted to withdraw and the trial court failed . . . . to conduct the required on-the-record waiver of counsel colloquy"). Initially, we note that this position was never raised at any point in the trial-court proceedings and, instead, was presented for the first time in Appellant's Pa.R.A.P. 1925(b) statement. Nevertheless, we hesitate to find the issue waived since in ***Commonwealth v. Davido****,* 868 A.2d 431 (Pa. 2005), our Supreme Court stated it is the trial court's responsibility to *sua sponte* ensure that a valid waiver-of-counsel colloquy is performed.

Due to the serious nature of the failure to conduct a waiver-of-counsel colloquy, we set forth the tortured procedural history of Appellant's representation during these cases. At criminal action number 1674 of 2011, the first one filed, Appellant claimed indigence following his arrest and was granted court-appointed counsel. After Appellant obtained bail, that appointment was revoked by a September 13, 2011 order wherein the Honorable Douglas W. Herman, stated: "[T]he Public Defender's Officer was appointed to represent the within defendant while in jail but he is no longer in jail, therefore, IT IS ORDERED that the appointment of the Public Defendant is rescinded and the **defendant will need to reapply for representation**." Order of Court, 9/13/11, at 1 (emphasis added). This order was served on Appellant personally.

Appellant did not reapply for appointed counsel. On November 16, 2011, Appellant executed a statement of rights wherein he was told, "You have a right to be represented by counsel. You have the right to have an attorney appointed to you free of charge if you cannot afford to employ one." Statement of Rights, 11/16/11, at 1. On December 19, 2011, Appellant appeared *pro se* before the trial court for a call of the list. At that

time, Appellant executed a written waiver-of-counsel form that was fully

compliant with Pa.R.Crim.P. 121[2] in that it stated:

_____

[2] That rule states:

> (1) The defendant may waive the right to be represented by counsel.
>
> (2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:
>
>> (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
>>
>> (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
>>
>> (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
>>
>> (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
>>
>> (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
>>
>> (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and

*(Footnote Continued Next Page)*

1. I understand that I have the right to be represented by an attorney, and have a right to a free attorney if I cannot afford to employ an attorney of my choosing.

2. I understand the nature of the charges against me and the elements of each of these charges.

3. I understand the permissible range of sentences and/or fines which may be imposed for the offense for which I am charged.

4. I understand that if I waive my right to an attorney and proceed today, I will still be bound by all the normal rules of procedure and that an attorney appointed for me or hired by me would be familiar with these rules.

5. I understand that there may be possible defenses to these charges which an attorney might be aware of, and if these defenses are not raised at trial, they may be lost forever.

6. I understand that I have many additional rights which if not timely raised may be lost forever.

7. I understand that if errors occur in my case that are not timely objected to or otherwise timely raised by me, the ability to address these errors with the court may be lost permanently.

Waiver of Counsel Pursuant to Pa.R.Crim.P. 121, 12/19/11, at 1.

Appellant then asked for a continuance of his trial date, which had been scheduled for January 9, 2012, and requested that it be moved to March 12, 2012. The application for continuance was executed by Appellant,

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯

> that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A).

the Commonwealth, and Judge Herman, and, in it, Appellant indicated that he needed time to prepare for trial. The Commonwealth reports that, when Appellant asked for a continuance and executed the Pa.R.Crim.P. 121 written waiver, "an on-the-record waiver of counsel colloquy pursuant to Pa.R.Crim.P. 121 was performed." Commonwealth's brief at 3. *See* Pa.R.Crim.P. 121(B) ("When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary, and intelligent waiver of counsel.").

Appellant does not dispute the accuracy of the Commonwealth's representation that Judge Herman conducted an on-the-record oral waiver colloquy on December 19, 2011. Since Appellant failed to obtain a transcription of the December 19, 2011 proceeding, we cannot independently confirm that this colloquy occurred. We therefore are compelled to recite the following regarding Appellant's capacity to order transcripts.

After Appellant filed his first appeal, he presented a petition for records. As requested in that document, Judge Herman ordered transcription of: a May 8, 2012 bail hearing, a July 3, 2012 pretrial and bail reduction hearing, an October 2, 2012 hearing on Appellant's suppression motion, an October 24, 2012 continued suppression hearing, a January 25, 2013 Pa.R.Crim.P. 600 hearing, a February 21, 2013 hearing on Appellant's

various pre-trial motions, the March 11, 2013 jury selection, all three days of the jury trial, and the May 15, 2013 sentencing hearing. Appellant thereafter asked for and obtained a transcript of a December 28, 2012 pre-trial conference.

Appellant filed yet another motion for transcripts, asking for transcription of an October 26, 2012 call-of-the-list proceeding. Appellant also demanded a copy of the docket entries at all three case numbers. Judge Herman granted these two requests, and a transcript of the October 26, 2012 call-of-the-list was filed, and Appellant was disseminated copies of the docket entries for all three matters. The docket entries for 1674 of 2011 clearly show the filing of the written waiver of counsel on December 19, 2011, and indicate that there was a call of-the-list proceeding conducted on that date.

Despite being aware of the procedure to obtain transcripts, having notice of the December 19, 2011 call-of-the-list proceeding and filing of the written waiver of counsel, and having ordered transcription of a different call-of-list proceeding, Appellant never asked for the notes of testimony from the hearing held before Judge Herman on December 19, 2011. Thus, we have no hesitation in accepting the Commonwealth's representation that Judge Herman, concomitant with obtaining a written waiver, did conduct an oral colloquy on December 19, 2011. Furthermore, it was Appellant's responsibility to ensure that the transcript was part of the record.

- 15 -

*Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa.Super. 2006) ("Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.").

The history of Appellant's representation at case numbers 1169-2012 and 1173 of 2012 follows. After those 2012 charges were filed, Appellant was appointed counsel, Scott J. Thomas, from the public defender's office. On July 25, 2012, Mr. Thomas filed a motion to suppress evidence, wherein he challenged the sufficiency of a warrant used to search the home of people to whom Appellant had given materials related to his stalking of Ms. Ross. On August 1, 2012, private counsel, Brian Oliver Williams, Esquire, entered his appearance. On October 2, 2012, Mr. Williams filed a petition to withdraw indicating that Appellant had fired him, and the motion was granted on October 16, 2012. Appellant proceeded to represent himself at trial, which was presided over by Judge Herman.

After Appellant was convicted and sentenced, he filed a timely *pro se* appeal. We remanded for the conduct of a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998), which holds, "When a waiver of the right to counsel is sought at the post-conviction and appellate stages, an on-the-record determination should be made that the waiver is a knowing, intelligent, and voluntary one." That hearing was held before Judge Herman on July 11, 2013, and Judge Herman indicated he

- 16 -

ascertained that Appellant wanted to proceed *pro se* and knowingly and voluntarily waived his right to counsel. Appellant asked for and obtained a copy of the transcript of that hearing.

On March 27, 2014, after filing a number of *pro se* motions with the trial court, Appellant then asked for the appointment of counsel. David Breschi, Esquire, was appointed, and, after Mr. Breschi moved to withdraw, Matthew Karasic, Esquire, was appointed. Thereafter, private counsel, Scott Nathan Pletcher, Esquire, entered his appearance. After Mr. Pletcher moved to withdraw, a second ***Grazier*** hearing was held on August 27, 2014, before Judge Herman. At that hearing, Judge Herman ascertained that Appellant did not want to proceed *pro se* but actually wanted court-appointed counsel so Kristopher Accardi, Esquire, was appointed to represent Appellant.

After the previous appeal was dismissed, Mr. Accardi moved to withdraw. This matter was re-assigned to the Honorable Angela R. Krom, who conducted another ***Grazier*** hearing and concluded that after "extensive discussion with the Defendant, the Court determines that he has in fact, waived his right to counsel and will proceed to represent himself." Order of Court, 8/5/15, at 1. Appellant asked for and obtained a copy of a transcript of that ***Grazier*** hearing.

Appellant then filed a *pro se* PCRA petition, and, at a hearing on that petition, Mr. Accardi appeared. Judge Krom again colloquied Appellant and ascertained that he wanted to proceed *pro se*. After that hearing, Appellant

obtained reinstatement of his appellate rights, and this *pro se* appeal followed.

On appeal, Appellant faults the trial court, Judge Herman, with failing to conduct a Pa.R.Crim.P. 121 colloquy at the beginning of trial, after Appellant's private counsel, Mr. Williams, asked to withdraw after Appellant fired him.[3]  As noted, under ***Davido***, ***supra***, the trial court must *sua sponte* conduct such a colloquy.  However, Judge Herman had presided over the December 19, 2011 proceeding, and knew that a waiver colloquy was conducted then.   There is no case law to support the notion that a judge is required to conduct two Pa.R.Crim.P. 121 colloquies.  Appellant was fully apprised on December 19, 2011, of the ramifications of his desire to proceed *pro se*, and Judge Herman did not have to repeat information already disseminated to Appellant.

In addition, in light of Appellant's behavior herein, we agree with Judge Krom's and the Commonwealth's position that ***Commonwealth v. Lucarelli***, 971 A.2d 1173 (Pa. 2009), applies in this case.  Therein, our High Court made a clear distinction between waiver of counsel and forfeiture of counsel.  Waiver is present when the defendant knowingly and voluntarily relinquishes his right to counsel while forfeiture occurs when a defendant's

_____

[3] Judge Krom prepared the Pa.R.A.P. 1925(a) opinion in this matter.  She acknowledged that a colloquy was not performed prior to trial, but did not realize that Judge Herman conducted one on December 19, 2011.

conduct is abusive, threatening, or extremely dilatory. *Id*. "Pa.R.Crim.P. 121 and its colloquy requirements do not apply to situations where forfeiture is found." *Id*. at 1179.

The *Lucarelli* Court concluded that the defendant therein forfeited his right to counsel, obviating the need for a Pa.R.Crim.P. 121 colloquy, based upon obstructive conduct sufficient to be characterized as extremely dilatory. Specifically, Lucarelli had the financial means to secure private counsel, fired several lawyers that he hired, was accorded over eight months to prepare for trial, and then appeared at trial without an attorney or an explanation for why counsel was not present. Our Supreme Court reversed our decision to grant Lucarelli a new trial due to the trial court's failure to conduct any Pa.R.Crim.P. 121 colloquy, ruling that the colloquy was not required since, based upon his conduct, Lucarelli forfeited his right to counsel. *See also Commonwealth v. Coleman*, 905 A.2d 1003 (Pa.Super. 2006).

As the above-procedural history demonstrates, Appellant initially had an appointed lawyer in all three cases, hired and then fired private counsel, asked to proceed *pro se* on numerous occasions, was given a Pa.R.Crim.P. 121 colloquy once prior to trial and three times after trial, retracted his request to represent himself after receiving one of those hearings, thereafter obtained a series of appointed lawyers, and then demanded to proceed *pro se* again.

In addition to this conduct with respect to representation, the record is replete with evidence of other obstructionist behavior by Appellant. Appellant's *pro se* filings are so voluminous that they fill a large box. Some of the *pro se* documents were presented while Appellant was represented by counsel, and they are largely indecipherable. Appellant was openly rude to Judge Herman at various points during these proceedings, reported him to the Judicial Conduct Board, and called him corrupt. Prior to trial, Appellant obtained a plethora of subpoenas, the vast majority of which were quashed after the people subpoenaed petitioned the court. Specifically, the quashed subpoenas were issued to: a member of the Office of Disciplinary Counsel, the entire Judicial Conduct Board, the Clerk of Courts of Franklin County, The Pennsylvania State Board of Medicine, a state senator, the mayor of Chambersburg, four magisterial district judges, two health care providers, nine correctional officers, the local warden and deputy wardens, the health providers for the Franklin County jail, and the Franklin County Commissioners and Administrator.

At trial, Appellant continuously interrupted both Judge Herman and the district attorney, even during closing arguments. He attempted to file a private criminal complaint raising perjury charges against Dr. Brady after her testimony at his trial. Appellant also moved to have the Franklin County District Attorney's Office disqualified from prosecuting him, and filed a disciplinary action against Mr. Williams, who represented him for only two

months. Appellant's behavior in this matter is far and above more obstructionist and abusive than that analyzed in *Lucarelli*, and we find it applicable herein. Simply put, the absence of a Pa.R.Crim.P. 121 colloquy after Mr. Williams was fired does not entitle Appellant to a new trial.

Appellant's other two contentions on appeal are that the stalking and harassment statutes are unconstitutional. We find Appellant's position as to the unconstitutionality of these statutes to be so rambling and confusing as to be virtually indecipherable. In *Ibn–Sadiika v. Riester,* 551 A.2d 1112, 1114 (Pa.Super. 1988), we ruled that "when an appellant fails to carry forward, or is indecipherably vague in, argumentation upon a certain point in his appellate brief, that point is waived." *Accord Commonwealth v. Gooding*, 649 A.2d 722 (Pa. Super. 1994). That precept certainly applies herein.

Moreover, in *Commonwealth v. Schierscher*, 668 A.2d 164 (Pa.Super. 1995), we ruled that the crimes of harassment and stalking, which were previously contained in a single statute, were not unconstitutionally vague and that they did not violate a person's first amendment rights to free speech. We also note that Appellant raises a claim that he had no notice that his behavior was criminal. The record belies this position. The Center and the police both informed Appellant that he was to stop contacting the victim, and he continued to do so. Additionally, as a condition of his bail in the first action filed herein, he was ordered not to

contact the victim. Appellant, after a brief respite, began to stalk and harass his victim again. For the foregoing reasons, we reject Appellant's challenges to the constitutionality of the stalking and harassment statutes.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2016