J-A07040-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN ALEXANDER BEERS V | : | |
| | : | |
| Appellant | : | No. 1164 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 10, 2019
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s): CP-44-CR-0000081-2018

BEFORE: BOWES, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.                **FILED APRIL 20, 2021**

Appellant, John Alexander Beers V, appeals *nunc pro tunc* from the judgment of sentence entered in the Court of Common Pleas of Mifflin County following his conviction by a jury on the charges of contraband (controlled substance), 18 Pa.C.S.A. § 5123(a), and possession of a controlled substance contraband by inmate prohibited, 18 Pa.C.S.A. § 5123(a.2). After a careful review, we affirm.

The relevant facts and procedural history are as follows: While he was an inmate at the Mifflin County Correctional Facility ("county jail"), Appellant was charged with various offenses related to contraband. On November 15,

_____

[*] Former Justice specially assigned to the Superior Court.

2018, represented by court-appointed counsel, Scott N. Pletcher, Esquire, Appellant appeared for his jury trial.

Prior to the jury being sworn in, Appellant made an oral request for the appointment of new counsel. N.T. 11/15/18, at 4. Appellant informed the trial court that he believed Attorney Pletcher was unprepared for trial, and he noted he had just met with Attorney Pletcher the day before trial. *Id.* at 4-6. Attorney Pletcher assured the trial court that he was prepared for Appellant's trial. *Id.* at 4-5.

Noting Attorney Pletcher had entered his appearance almost a year prior to trial,[1] and Appellant made his request for new counsel just minutes before the jury entered the courtroom, the trial court denied the request. *Id.* at 6. The jury was then brought into the courtroom and immediately sworn in with testimony commencing thereafter.

Gabriel Specht testified that, on December 13, 2017, he was remanded to the county jail, at which time he had within his body Subutex, which is a maintenance drug for heroin addicts, as well as Seroquel, which is an antipsychotic medication. *Id.* at 24. Subutex is also known as Buprenorphine, and Mr. Specht had in his possession approximately 20 pills. *Id.* Specifically, Mr. Specht explained that he swallowed a small glass vial containing the pills

---

[1] Attorney Pletcher entered his appearance on February 13, 2018.

at the courthouse after he realized he was going to be remanded to the county jail. *Id.* at 25.

Mr. Specht testified that, when he entered the county jail, he was initially placed in a cell on the B-Block, and during his first night at approximately 1:00 a.m., Appellant, who was assigned to clean the B-Block, knocked on his cell's window. *Id.* at 29. Appellant asked Mr. Specht if he "had anything." *Id.* Mr. Specht testified he understood this to mean Appellant was asking him if he had any drugs in his possession. *Id.* Mr. Specht testified that he said, "no," but he asked Appellant to bring him coffee, which is a commodity within the county jail. *Id.* at 30.

The next night, Appellant put an envelope of coffee through Mr. Specht's cell door, and in return, Mr. Specht passed Appellant a piece of a Buprenorphine pill, which he had placed in a wad of paper. *Id.* at 31. Mr. Specht explained that by this point he had retrieved the glass vial of pills from his stool after going to the bathroom, and he then put the vial in his sock. *Id.* at 32.

The next day, Mr. Specht was assigned to the F-Block, which is a dormitory-style setting. *Id.* Appellant was also assigned to the F-Block during this time. *Id.* As soon as Mr. Specht arrived at the F-Block, another inmate approached him about the pills. *Id.* at 33. Mr. Specht testified he became scared, asked Appellant to hide the pills, and told him to "take out around six pills." *Id.* at 34. He indicated he told Appellant to distribute the Buprenorphine

pills to some of the inmates, including Justin Null and Mark Weber, and Appellant later told Mr. Specht that he gave the pills to the named inmates. *Id.* at 34-35.

The next day, Appellant informed Mr. Specht that he had also given some of the pills to inmate Cole Smith. *Id.* at 35. This caused Mr. Specht to be concerned because he saw physical evidence that Mr. Smith was "high," and he was concerned the prison staff would notice, as well. *Id.* at 36.

Mr. Specht indicated he told Appellant to give him back the vial of pills because he was concerned that they were going to get in trouble. *Id.* Appellant later gave the vial, which still contained some pills, back to Mr. Specht. *Id.* at 37. Mr. Specht testified he gave the vial of pills to prison guards the next morning. *Id.* at 38-40.

Cole Smith confirmed he was an inmate at the county jail, and Appellant was assigned to clean the hallways. *Id.* at 50. Mr. Smith testified he knew Mr. Specht from his youth, and when he saw Mr. Specht being processed, he told Appellant that it was likely Mr. Specht had drugs on his person. *Id.* at 51. He testified he gave the coffee to Appellant to give to Mr. Specht in exchange for drugs, and the next day, he received a crushed-up pill from Appellant. *Id.* at 51-56. He used the crushed-up pill, which he believed to be Buprenorphine, to get "high." *Id.* at 56.

Shane Tomlinson, a lieutenant at the county jail, testified he received information indicating that Mr. Specht, who was in the F-Block, had

contraband on him. *Id.* at 64. The Lieutenant told Mr. Specht he was going to subject him to an x-ray to search for drugs, and Mr. Specht, after using the bathroom in a "dry cell,"[2] gave him the vial, which had been in Mr. Specht's anal cavity. *Id.* at 64-67. The vial contained fourteen and one-half pills. *Id.* Lieutenant Tomlinson gave the vial of pills to the police. *Id.* at 68.

Joshua Garver, the warden of the county jail, confirmed Appellant was an inmate at the county jail in December of 2017, and he was assigned to the F-Block. *Id.* at 73. He also confirmed Appellant was an inmate assigned to clean several areas from 10:00 p.m. to 6:00 a.m., and he had access to the B-Block. *Id.* Moreover, the Warden confirmed Mr. Specht was on the B-Block and then assigned to the F-Block in December of 2017. *Id.* at 74-75. He noted that the county jail's video surveillance system recorded an interaction between Mr. Specht and Appellant while Mr. Specht was in the B-Block cell. *Id.* at 76.

Lewistown Borough Police Officer Bruce Mann testified that Lieutenant Tomlinson gave him a baggie containing "14 pills and a partial," as well as a vial, on the day in question. *Id.* at 86. Lieutenant Tomlinson indicated he had received the pills from Mr. Specht. *Id.* at 87. Officer Mann confirmed that testing by the Pennsylvania State Police Crime Lab revealed the pills were Buprenorphine. *Id.*

---

[2] The Lieutenant testified a "dry cell" is one in which the water to the cell's toilet and sink is turned off. *Id.* at 65.

At the conclusion of the trial, the jury convicted Appellant of the charges indicated *supra*, and on January 10, 2019, Appellant proceeded to a sentencing hearing. The trial court sentenced Appellant to 30 months to 120 months in prison for each offense, with the sentences to run concurrently. Appellant was provided with his post-sentence and appeal rights.

Appellant did not file post-sentence motions; however, on Monday, February 11, 2019, he filed a timely, counseled notice of appeal.[3] On July 24, 2019, this Court dismissed Appellant's appeal due to counsel's failure to file an appellate brief. Appellant did not file a petition for allowance of appeal with our Supreme Court.

On or about December 26, 2019, Appellant filed a timely *pro se* PCRA[4] petition[5] averring, *inter alia*, that direct appeal counsel was ineffective in

---

[3] Absent timely post-sentence motions, an appellant has thirty days to file an appeal to this Court from his judgment of sentence. **See** Pa.R.Crim.P. 720. Here, the thirtieth day fell on Saturday, February 9, 2019. However, whenever the last day of the appeal period falls on a Saturday or Sunday, such day is omitted from the computation. 1 Pa.C.S.A. § 1908.

Moreover, we note that, although the docket entries indicate the notice of appeal was filed on February 13, 2019, the notice of appeal was time-stamped as filed by the clerk of courts on February 11, 2019. Accordingly, Appellant's notice of appeal was timely filed.

[4] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

[5] This Court has held that, where an appellant's timely direct appeal is dismissed for counsel's failure to file a brief, the judgment of sentence becomes final upon expiration of the time for the appellant to file a petition for allowance of appeal with our Supreme Court. **See Commonwealth v. Turner**, 73 A.3d 1283 (Pa.Super. 2013). Accordingly, Appellant's judgment

failing to file a brief on behalf of Appellant. The PCRA court appointed new counsel, and by order entered on August 17, 2020, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*.

This counseled appeal followed on September 8, 2020. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement, counsel complied, and on November 6, 2020, the trial court filed a Pa.R.A.P. 1925(a) opinion.

In his first issue, Appellant contends the trial court erred in denying his request for new counsel, which he made prior to the start of his jury trial.

"The decision whether to appoint new counsel lies within the trial court's sound discretion." ***Commonwealth v. Wright***, 599 Pa. 270, 961 A.2d 119, 134 (2008).

> The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his or her defense. Similarly, Article I, Section 9 of the Constitution of this Commonwealth affords to a person accused of a criminal offense the right to counsel. However, the constitutional right to counsel of one's own choice is not absolute.

***Commonwealth v. Lucarelli***, 601 Pa. 185, 971 A.2d 1173, 1178-79 (2009) (internal citations omitted).

---

of sentence became final on or about August 24, 2019. Pa.R.A.P. 1113(a) (indicating an appellant has 30 days to file a petition for allowance of appeal with our Supreme Court). Thereafter, Appellant filed his *pro se* PCRA petition on December 26, 2019, which was within one year of the date the underlying judgment became final. 42 Pa.C.S.A. § 9545(b)(1). Accordingly, Appellant's PCRA petition was timely. ***See Turner***, ***supra***.

Furthermore, "[a] motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). "To satisfy this standard, a defendant must demonstrate that he has an irreconcilable difference with counsel that precludes counsel from representing him." *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139, 1150 (2000) (citations omitted). We have held that a strained relationship with counsel, a difference of opinion in trial strategy, a lack of confidence in counsel's ability, or brevity of pretrial communications do not necessarily establish irreconcilable differences. *See Commonwealth v. Floyd*, 937 A.2d 494, 497-98 (Pa.Super. 2007).

In the case *sub judice*, in explaining the reasons it denied Appellant's request for new counsel, the trial court relevantly indicated the following:

> [Appellant] made his request [for new counsel] minutes before the jury was called to begin the trial….Additionally, defense counsel had met with [Appellant] prior to trial and had stated on the record that he had sufficient time to adequately prepare for trial. Based on [Appellant's] late request and assurances by defense counsel, the [trial court's] denial [of the request] was proper and [the trial court] did not abuse its discretion when balancing [Appellant's] request with the efficient and effective administration of justice.

Trial Court Opinion, filed 11/6/20, at 2.

We find no abuse of discretion in the trial court's sound reasoning. Here, Appellant waited until minutes before the jury was sworn in to request new counsel. This tactic has been rejected by the appellate courts. *See Lucarelli*, *supra*, 971 A.2d at 1179 (holding defendants "should not be permitted to

unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice"); ***Commonwealth v. Kittrell***, 427 A.2d 1380 (Pa.Super. 1981) (finding no error in trial court denying request for continuance to secure new counsel when such was made on day of trial).

Furthermore, the trial court determined Appellant's appointed trial counsel was prepared for trial, and there was no indication trial counsel would not zealously represent Appellant. ***See Commonwealth v. Keaton***, 615 Pa. 675, 45 A.3d 1050 (2012) (concluding the trial court did not abuse its discretion in denying the defendant's motion to change appointed counsel since the trial court found there was no reason that the defendant's counsel was incapable of zealous representation); ***Commonwealth v. Broitman***, 217 A.3d 297 (Pa.Super. 2019) (holding the denial of request to change counsel where there is no claim of irreconcilable differences is not grounds for reversing where the request is made just before trial and would delay trial, even when the defendant refuses to communicate with counsel).

Simply put, Appellant's belated request for new counsel based on vague assertions of unpreparedness does not constitute "substantial reasons" as required by Pa.R.Crim.P. 122(c). Thus, the trial court did not abuse its discretion in denying Appellant's motion for new appointed counsel. ***See Floyd***, ***supra***.

In his next claim, Appellant contends the evidence was insufficient to sustain his convictions.[6] Specifically, he claims the evidence demonstrates, at most, that Mr. Specht is guilty of these crimes, but that Appellant is not.

Our standard of review in sufficiency of the evidence claims is as follows:

> [We determine] whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa.Super. 2015) (citation omitted).

---

[6] We note that, in his brief, Appellant conflates the standard of review for weight and sufficiency of the evidence claims; however, such claims are separate with distinct standards of review. *See Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000). Our review of Appellant's appellate argument convinces us that he is challenging the sufficiency of the evidence. In any event, Appellant has not set forth where he preserved a weight of the evidence claim in the trial court. *See* Pa.R.Crim.P. 607 (indicating a weight of the evidence claim must be raised orally at any time before sentencing, by written motion before sentencing, or in a post-sentence motion).

Appellant was convicted under 18 Pa.C.S.A. § 5123(a), contraband, and 18 Pa.C.S.A. § 5123(a.2), possession of a controlled substance contraband by inmate prohibited. The relevant statute provides as follows, in pertinent part:

**(a) Controlled substance contraband to confined persons prohibited.--**A person commits a felony of the second degree if he sells, gives, transmits or furnishes to any convict in a prison,… or gives away in or brings into any prison,… or puts in any place where it may be secured by a convict of a prison…, any controlled substance included in Schedules I through V of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution[.]

\*\*\*

**(a.2) Possession of controlled substance contraband by inmate prohibited.--**A prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of section 13(a)(16)[7] of The Controlled Substance, Drug, Device and Cosmetic Act. For purposes of this subsection, no amount shall be deemed de minimis.

18 Pa.C.S.A. § 5123(a), (a.2) (bold in original) (footnotes omitted) (footnote added).

---

[7] The Controlled Substance, Drug, Device and Cosmetic Act provides:
(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
\*\*\*
(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.
35 P.S. § 780-113(a)(16).

With regard to Subsection 5123(a), Appellant does not dispute that he was in prison or that the people to whom he is alleged to have given a controlled substance are "convicts in a prison."  18 Pa.C.S.A. § 5123(a).  Similarly, with regard to Subsection 5123(a.2), he does not dispute that he was a "prisoner or inmate."  18 Pa.C.S.A. § 5123(a.2).

However, with regard to Subsection 5123(a), he contends there is no evidence that he sold, gave, transmitted or furnished to any convict, or gave away in prison any controlled substance.  Moreover, with regard to Subsection 5123(a.2), he argues there is no evidence he unlawfully had under his control or in his possession[8] any controlled substance in violation of 35 P.S. § 780-113(a)(16).  Viewing the evidence in the light most favorable to the Commonwealth, the verdict winner, we find no merit to Appellant's claim assailing the sufficiency of the evidence.

_____

[8] "Possession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa.Super. 1999) (*en banc*). Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Id.* (citation and quotation omitted).  "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation omitted). "To aid application, we have held that constructive possession may be established by the totality of the circumstances." *Id.* (citation and quotation omitted).  As with any other element of the crime, the Commonwealth may prove constructive possession through circumstantial evidence. *Id.*

Mr. Specht, an inmate, admitted that he brought into the county jail a vial of Buprenorphine pills. N.T., 11/15/18, at 20-25. He testified that he initially provided a piece of a Buprenorphine pill to Appellant when he was in a B-Block cell, *id.* at 31, and he subsequently gave the vial of pills to Appellant to keep in his possession when he was in the F-Block. *Id.* at 34. He further testified he told Appellant to give some of the pills to other inmates, and Appellant later informed Mr. Specht that he did so. *Id.* at 34-35.

Furthermore, another inmate, Cole Smith, testified he knew Mr. Specht, and when he saw him being processed, he told Appellant to ask Mr. Specht if he had any drugs. *Id.* He testified he gave coffee to Appellant to give to Mr. Specht in exchange for drugs. *Id.* at 51-56. The next day, Appellant gave him a crushed-up pill, which he believed to be Buprenorphine, and it made him feel "high." *Id.* at 56. Mr. Specht testified that, after viewing signs of Mr. Smith being "high," he retrieved the vial of pills from Appellant. *Id.* at 37.

This same vial of pills was later seized by Lieutenant Tomlinson after Mr. Specht removed them from his anal cavity. *Id.* at 64-67. Police Officer Mann testified he retrieved the vial of pills from the lieutenant and testing by the Pennsylvania State Police confirmed the pills were Buprenorphine.[9]

_____

[9] Buprenorphine is a schedule III controlled substance. *Id.* at 101.

Warden Garver confirmed Appellant was assigned to the F-Block with Mr. Specht, as well as Mr. Smith, and a video surveillance system recorded Appellant having some sort of interaction with Mr. Specht when he was confined to a cell in the B-Block. *Id.* at 73-76.

Based on the aforementioned, we conclude the Commonwealth proved, beyond a reasonable doubt, that Appellant "gave, transmitted or furnished to any convict, or gave away in prison any controlled substance" as prohibited by Subsection 5123(a). Further, the Commonwealth demonstrated Appellant "unlawfully ha[d] in his possession or under his control [a] controlled substance" as prohibited by Subsection 5123(a.2).

While Appellant sets forth an argument based on the recitation of the evidence in the light most favorable to him, we reject his argument. Based on the aforementioned, we conclude the evidence was sufficient to sustain Appellant's convictions.

For all of the foregoing reasons, we affirm.

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/20/2021

- 14 -