J-A29042-24

2025 PA Super 24

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK ANTHONY BRINKLEY | : | |
| | : | |
| Appellant | : | No. 493 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 28, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000127-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK A. BRINKLEY | : | |
| | : | |
| Appellant | : | No. 494 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 28, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000129-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK A. BRINKLEY | : | |
| | : | |
| Appellant | : | No. 495 WDA 2024 |

Appeal from the Judgment of Sentence Entered March 28, 2023
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000128-2022

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:                    **FILED:  January 28, 2025**

In these consolidated appeals, Mark Anthony Brinkley ("Appellant") appeals from the judgments of sentence imposed following his convictions for three counts of robbery and related offenses.[1]  Appellant contends that the trial court abused its discretion in denying his motion to suppress, and that it further erred in permitting hybrid representation at the suppression hearing. After careful consideration, we affirm.

Appellant was charged in connection to several armed robberies at a Dollar Tree store, a Walgreens, and a Rite Aid drugstore, all occurring over a

_____

[1] More specifically, Appellant was charged as follows:  At Docket No. 127 of 2022, Appellant was charged with Robbery – Threat of Immediate Serious Bodily Injury, 18 Pa.C.S. § 3701(a)(1)(ii); Person not to Possess a Firearm, 18 Pa.C.S. § 6105(a(1); Firearms not to be Carried Without a License, 18 Pa.C.S. § 6106(a)(1); two counts of Terroristic Threats, 18 Pa.C.S. § 2706(a)(1); Receiving Stolen Property, 18 Pa.C.S. § 3925(a); two counts of Unlawful Restraint/Serious Bodily Injury, 18 Pa.C.S. § 2902(a)(1); Possession of Weapon, 18 Pa.C.S. § 907(b); two counts of Recklessly Endangering Another Person, 18 Pa.C.S. § 2705; two counts of Simple Assault, 18 Pa.C.S. § 2701(a)(3); Tampering with Evidence, 18 Pa.C.S. § 4910(1); and Theft by Unlawful Taking, 18 Pa.C.S. § 3921(a).

At Docket No. 128 of 2022, Appellant was charged with Robbery; two counts of Theft by Unlawful Taking; two counts of Receiving Stolen Property; Possessing an Instrument of Crime, 18 Pa.C.S. § 907(a); Terroristic Threats; Simple Assault; two counts of Person not to Possess a Firearm; and Firearms not to be Carried Without a License.

At Docket No. 129 of 2022, Appellant was charged with Robbery; Theft by Unlawful Taking; Receiving Stolen Property; Possession of an Instrument of Crime; two counts of Terroristic Threats; two counts of Simple Assault; Person not to Possess a Firearm, and Firearms not to be Carried Without a License. Following trial, Appellant was convicted of all charges.

span of about a week in October 2021. On January 18, 2022, the Commonwealth filed three criminal informations charging Appellant as noted. Prior to trial, on January 23, 2023, Appellant's appointed counsel, Alison Scarpitti, Esq., filed a motion for nominal bail pursuant to Pa.R.A.P. 600, and a motion to withdraw as counsel due to an irretrievable breakdown in the attorney/client relationship. Then, on January 30, 2023, Attorney Scarpitti filed a motion to suppress.

The court conducted a hearing on all pre-trial motions on February 3, 2023. At the hearing, the following facts were established relating to Appellant's motion to suppress. Officer Joshua Allison of the City of Erie Police Department testified that he was investigating a drugstore robbery at 26th and Peach Street, when the employees told him that the lone robber had left the store on foot. N.T., 2/3/23, at 15. Further, the money stolen in this robbery had also been associated with a GPS monitor, such that the money could be tracked. *Id.* Police dispatch was able to locate the tracker, and Officer Allison proceeded to that location. *Id.* When he arrived, Appellant was in custody, having been arrested by the other officers who had arrived at that location first, and was seated in the rear of a police vehicle. *Id.* at 15-16, 27. The other officers had proceeded to the door of the residence and encountered a woman who let them inside the two-story apartment. *Id.* at 17-21. Once inside the apartment, while other officers proceeded to the second floor, Officer Allison saw an open door to a bathroom on the first floor. *Id.* at 21. On the floor of the bathroom, the officer saw a gray sweatshirt and a plastic

grocery-type bag with money coming out of it. *Id.* at 21-23. Also found was a set of keys on the vanity. *Id.* at 22. Officer Allison did not seize the bag full of money; once the building was cleared, the officers sought a search warrant for these items. *Id.* at 24-25.

Following the hearing, the trial court denied Appellant's pre-trial motions. Order, 2/7/23. Attorney Scarpitti also filed a motion to sever Appellant's charges, which was granted as to the charges filed under 18 Pa.C.S. § 6105 for Person not to Possess a Firearm. Order, 2/14/23. Appellant was convicted of all charges following his trial on February 14, 2023.

Attorney Scarpitti filed another motion to withdraw her representation on March 28, 2023, prior to sentencing, again due to the breakdown in the attorney/client relationship. The motion was denied. The court then imposed an aggregate sentence of 22½ to 45 years of incarceration, with credit for time served. Thereafter, Appellant filed an untimely *pro se* post-sentence motion. Attorney Scarpitti filed a request with the trial court to consider timely Appellant's post-trial motion. By the order entered April 13, 2023, the court accepted the motion as timely filed, but dismissed the challenge to Appellant's sentence.

On September 20, 2023, Appellant filed three *pro se* notices of appeal to this Court, purporting to appeal from his judgments of sentence.[2] After these were filed, the trial court appointed the Erie County Public Defender's

---

[2] These appeals were given the Superior Court docket numbers 1232 WDA 2023, 1233 WDA 2023, and 1234 WDA 2023.

Office to represent Appellant on his appeals.  Order, 9/25/23.  However, because Appellant's *pro se* appeals were filed more than 30 days after the trial court had denied the post-sentence motion on April 13, 2023, this Court quashed the appeals as untimely filed.  **See** Pa.R.Crim.P. 720(A)(2)(a) ("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed … within 30 days of the entry of the order deciding the motion[.]"); Order, 2/23/24.

While the untimely appeals were still pending, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546, in the trial court on November 9, 2023.  This petition was dismissed by the trial court as premature.  Then, after the untimely appeals were quashed by this Court, Appellant filed another *pro se* PCRA petition, seeking reinstatement of his right to appeal.  The trial court granted PCRA relief by reinstating Appellant's appellate rights *nunc pro tunc* on March 25, 2024.  On April 22, 2024, Appellant then filed the instant, counseled notices of appeal, which our Court has consolidated for review.  Order, 5/3/24.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues on this appeal:

A.    Whether the lower [c]ourt committed legal error and abuses [*sic*] its discretion in failing to grant … [A]ppellant's Motion to Suppress?

B.    Whether the lower [c]ourt committed legal error and abused its discretion in failing to resolve and demarcate clearly the matter of legal representation for purposes of the suppression hearing[,] resulting in a hybrid situation whereby counsel was involved to a degree while … [A]ppellant acted *pro se* throughout[,] thereby

- 5 -

manifesting in a muddled and prejudicial hearing at a critical stage of the criminal litigation?

Appellant's Brief at 3.  We consider these issues in turn.

Appellant first argues that the trial court erred in denying his motion to suppress the evidence.  This Court's well-settled standard of review of a denial of a motion to suppress is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous.  Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526–27 (Pa. Super. 2015) (cleaned up).  The reviewing court's scope of review is limited to the record evidence from the suppression hearing.  ***Id.***

Appellant's suppression challenge is two-fold.  First, Appellant asserts that police had no valid rationale to support using the protective sweep doctrine as Appellant, the sole suspect in the robberies, was seated in a police car when the officers decided to enter the apartment building.  Second, Appellant argues that the woman who supposedly granted permission to the

officers to enter the apartment had no authority to give consent to search inside the residence.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others[,]" which is "narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). *Buie* sets forth two distinct levels of protective sweeps:

> [A]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 334. *See also Commonwealth v. Taylor*, 771 A.2d 1261, 1267-68 (Pa. 2001) (stating that, "[t]o decide whether the facts justified a protective sweep, the reviewing court must consider all of the facts objectively and from the position of the reasonably prudent police officer[,]" and that where the sweep extended beyond the area within the immediate vicinity of the arrest, "there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene") (citations and some quotation marks omitted).

Appellant maintains that there was no justification for a protective sweep in this instance because he was seated in the rear of the police car

when the officers sought to enter the residence. The 911 report and witnesses at the scene specified that a single black male was involved in the robbery. Further, as Officer Joshua Allison approached the residence, he saw one black male (*i.e.*, Appellant) in custody in the rear of the police car. Accordingly, Appellant maintains that Officer Allison could not have had a reasonable belief that an accomplice was present, invalidating the basis for the protective sweep.

We agree with Appellant that a protective sweep was inappropriate under these circumstances. At the time that Officer Allison arrived on the scene, Appellant was restrained in the rear of a police car. As Appellant was in custody outside of the property, he no longer posed a threat to officers; he clearly was not in a position to launch an attack from the residence. No possible cohorts from inside the apartment could have attacked the officers outside, either. Further, police were looking for someone who acted alone. Thus, this situation is not one of the "first level" of protective sweeps under **Buie**; those only occur incident to an arrest and encompass the area immediately adjoining the place of arrest. **Buie**, 494 U.S. at 334.

A protective sweep may be justified under the "second level" articulated in **Buie** only if the officer articulates specific facts to justify a reasonable belief that someone was inside the residence and posed a danger to police. **Id.** Officer Allison testified at the suppression hearing to the circumstances surrounding his entry into Appellant's residence:

> Q: And were you responsible for trying to track down the [suspect in the] aftermath of an armed robbery?
>
> A: Yes, sir, I was.

N.T. at 14. Officer Allison stated that he first went to the robbery location and was informed that "the person was last seen leaving on foot." *Id.* at 15. He further obtained an address from dispatch, which had tracked the stolen money via a GPS tracker. *Id.*

> Q: And … do you eventually go to a specific area where the tracker is?
>
> A: Yes. And that would be 418 West 8th.
>
> Q: When you arrive on 418 West 8th, are you the first police officer there?
>
> A: No. I was actually a little bit late to the scene.
>
> Q. When you get to 418 West 8th or the West 8th area, is anybody in custody at that point?
>
> A: Yes[, Appellant] was in custody.

*Id.* at 14-15. Other officers were speaking with someone at the door of the residence when Officer Allison arrived. *Id.* at 17. Specifically, the officer at the front door, Officer Danny Shields, was speaking to a woman who identified herself as Rachel Bercik.[3] *Id.* at 16. Ms. Bercik stated that she had recently moved into the residence with Appellant. *Id.* at 19. Officer Shields asked Ms. Bercik whether she would permit him to conduct a protective sweep, and she replied, "Go ahead," and stepped aside, letting police enter. *Id.* at 19-20.

---

[3] The record is unclear whether this person's last name is "Bercik" or "Bucik." We use "Bercik" herein.

Based upon the information available, there was only one robbery suspect, and he was in custody. Under these facts, officers could not have had any *reasonable* suspicion that others could have been present inside the apartment to justify a protective sweep. The more reasonable inference is that the officers were looking for evidence such as the weapon used in the robbery, the robbery proceeds, and/or the GPS tracker. Thus, we conclude that the officers did not have reasonable suspicion to conduct a protective sweep of the premises. This does not end our inquiry, however, because Officer Shields also obtained consent to enter from Ms. Bercik.

A valid exception to the warrant requirement exists when law enforcement searches an area with consent. *Commonwealth v. Lehnerd*, 273 A.3d 586, 590 (Pa. Super. 2022). "Warrantless entry and search of a house is constitutionally permissible where an occupant with authority over the premises consents to the entry and search." *Id.* Moreover, consent to search will be deemed voluntarily given when it is the product of a free and unrestrained choice, and not the result of duress or coercion, express or implied. *Commonwealth v. Strickler*, 757 A.2d 884, 901 (Pa. 2000).

Appellant argues that Ms. Bercik did not have authority to give consent for a search for two reasons: (1) she was under the influence of heroin at the time and (2) she had told police that Appellant was in the bathroom when they came to the door, even though he was in the back of the police car at the time. Appellant's Brief at 10. Neither of these arguments have merit. As for whether Ms. Bercik was incapacitated due to drug use, Officer Allison

testified that she first told the officers that she had "recently moved there" with Appellant. N.T. at 20. When asked for consent to look around, she told the officers to "go ahead," and stepped out of their way. *Id.* Appellant asked the officer if Ms. Bercik was high during their interaction, but the officer said that he did not recall that. *Id.* at 39. Apparently, at some point during the interaction as captured by the officer's body cam, Ms. Bercik offered that she and Appellant were both heroin addicts, and that Appellant had recently picked her up from the hospital. *Id.* Officer Allison reiterated that he did not recall that statement, and testified that Ms. Bercik did not appear to be inebriated at the time. *Id.* at 40. The trial court credited Officer Allison's testimony that Ms. Bercik was not inebriated, which finding has support in the record, and we are thus bound by this conclusion. *Jones, supra*.

Appellant's second reason to discredit Ms. Bercik's testimony is that she had incorrectly told officers that Appellant was in the bathroom when in fact he had been arrested and was sitting in the rear of the police car. Yet, whether Ms. Bercik had an accurate understanding of Appellant's whereabouts at all times is irrelevant to the question of whether she had apparent authority to consent to the search. More importantly, our courts have repeatedly found that a person has apparent authority to consent to the search of a residence when the individual is at the dwelling when officers arrive and then tells the officers that he or she lives in or is currently staying at the residence. *Lehnerd*, 273 A.3d at 590-91 (collecting cases). Here, when officers came to the door of the residence, Ms. Bercik appeared and told them that she had

- 11 -

recently moved in with Appellant. N.T. at 43. Nothing put officers on notice that Ms. Bercik did not have the authority to permit them to enter. After review, we conclude that a reasonable officer would have believed that the person who gave consent had the authority to permit others to enter the premises. *Lehnerd*, *supra*. As such, the officers' entry into the residence was proper. Appellant's first issue does not garner him relief.

Turning to Appellant's second issue on appeal, he maintains that the court erred in conducting the suppression hearing with questioning from Appellant's counsel, Attorney Scarpitti, and questioning from Appellant himself. Appellant suggests that he was afforded an insufficient colloquy regarding his waiver of the right to counsel.

At the beginning of the suppression hearing, the court informed Appellant that it would first consider Attorney Scarpitti's request to withdraw. After informing Appellant that he would not be appointed a second public defender, the court noted that his options were limited:

> So really there's only three choices in this situation: You can represent yourself with her [as] standby, you can get a private attorney if you can afford one, or [Attorney] Scarpitti will represent you at trial.

N.T. at 4. In response, Appellant stated: "I don't have a choice. First, I don't have no [*sic*] money to get an attorney. I'm not educated myself to represent myself, and what she gone do [*sic*] for me is not going to be conducive towards helping me out." *Id.* at 5-6. He continued:

> My thing is I would do a hundred years before I sit here and let this lady represent me when me and her from day one - - she

- 12 -

saying some racist stuff to me. She's not working in my best interest, so I would like for her to remove herself from my case. Y'all say that can't happen, so I would just file for ineffective counsel down the line.

*Id.* at 8. Appellant repeated his refrain that he did not want Attorney Scarpitti as his counsel, but he would not represent himself, either. *Id.* at 8-11. The trial court attempted to proceed with a colloquy as to self-representation, but, at a certain point, Appellant simply stopped responding to questions and sat silently. *Id.* at 14.

In his brief to this Court, Appellant suggests that the "hybrid" representation which occurred following the above exchange was error, that the trial court "should have made a definitive ruling either way" as to whether Attorney Scarpitti remained counsel of record, and that he is now entitled to a *de novo* suppression hearing. Appellant's Brief at 15. We disagree.

Initially, we note that Appellant failed to object to the trial court's permitting him, along with Attorney Scarpitti, to ask questions of witnesses at the hearing. This could be considered a waiver of his claim. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Moreover, even if not waived, it is difficult to discern how Appellant was prejudiced by the trial court's permitting him to ask witnesses the questions he wished to ask alongside counsel's advocacy on his behalf.

While it is true that a criminal defendant has a constitutional right to be represented by counsel, the right to counsel is not absolute, and it can be

waived or forfeited. ***Commonwealth v. Lucarelli***, 971 A.2d 1173, 1178 (Pa. 2009).

> [T]he right of an accused individual to choose his or her own counsel, as well as a lawyer's right to choose his or her clients, must be weighed against and may be reasonably restricted by the state's interest in the swift and efficient administration of criminal justice. Thus, while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice.

***Id.*** at 1178-79 (citations omitted). Our Supreme Court has also noted:

> The situation is different for a defendant who is not employing counsel at his own expense, and who, at public expense, seeks court-appointed counsel. Such a defendant does not have a right to choose the particular counsel to represent him. Nor, after counsel has been appointed, can he change to other assigned counsel unless a substantial reason exists for the change.

***Commonwealth v. Rucker***, 761 A.2d 541, 542 n.1 (Pa. 2000) (citations omitted).

Waiver of counsel and forfeiture of counsel are different animals entirely. Waiver of counsel is often associated with defendants who wish to defend themselves at trial, and it requires the court to colloquy the defendant about the risks of self-representation in order to ensure that the decision to waive counsel is voluntarily, knowingly, and intelligently made. ***See Faretta v. California***, 422 U.S. 806 (1975); ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998) (setting forth the procedure required when defendants request to remove counsel and proceed *pro se*, specifically the required colloquy that the waiver of counsel is knowingly, voluntarily, and intelligently made). In

the case at bar, Appellant repeatedly refused to answer the questions posed to him regarding self-representation, only indicating that he would not work with Attorney Scarpitti. There was no **Faretta/Grazier** waiver here.

Forfeiture of counsel is a distinct concept that can occur despite the defendant's personal desires. The Third Circuit Court of Appeals explained the difference between waiving counsel and forfeiting counsel as follows: "Unlike waiver, which requires a knowing and intentional relinquishment of a known right, forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." **United States v. Goldberg**, 67 F.3d 1092, 1100 (3d Cir. 1995); **see also Lucarelli**, **supra**.[4] Forfeiture of counsel may be the result of a defendant's extremely serious misconduct or extremely dilatory conduct. **Lucarelli**, 971 A.2d at 1179. There is no colloquy required for the court to find that a defendant has forfeited his right to counsel. **Id.**

The Third Circuit has also discussed a third, related concept, that of "waiver by conduct." **Goldberg**, 67 F.3d at 1100. Waiver by conduct occurs when a defendant consistently acts to cause delay in his trial, but not to such a degree that a court is comfortable with calling the conduct "extremely" dilatory; nonetheless, the defendant's actions disrupt the ordinary procedures of trial. "Once a defendant has been warned that he will lose his attorney if

---

[4] Decisions of federal circuit courts are not binding upon this Court, but may serve as persuasive authority. **Dobransky v. EQT Prod. Co.**, 273 A.3d 1133, 1146 n.10 (Pa. Super. 2022) (*en banc*).

he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." ***Id.*** The court further explained:

> These are not "waiver" cases in the true sense of the word. In many situations there will be defendants who engage in dilatory conduct but who vehemently object to being forced to proceed *pro se*. These defendants cannot truly be said to be "waiving" their Sixth Amendment rights because although they are voluntarily engaging in misconduct knowing what they stand to lose, they are not affirmatively requesting to proceed *pro se*. Thus, instead of "waiver by conduct," this situation more appropriately might be termed "forfeiture with knowledge."
>
> Recognizing the difference between "forfeiture" and "waiver by conduct" is important. First, because of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a "waiver by conduct" could be based on conduct less severe than that sufficient to warrant a forfeiture. This makes sense since a "waiver by conduct" requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se.* A defendant who engages in dilatory conduct having been warned that such conduct will be treated as a request to proceed *pro se* cannot complain that a court is "forfeiting" his right to counsel.

***Id.*** at 1101.

Here, Appellant steadfastly refused to work with his appointed counsel, Attorney Scarpitti. Regardless of his assertions that she provided ineffective assistance, we note that Attorney Scarpitti filed several motions on Appellant's behalf, including the suppression motion he requested which argued the protective sweep issue. When informed that no other public defender would be appointed, Appellant refused to engage in a full ***Grazier*** colloquy, simply repeating that he did not wish Attorney Scarpitti to represent him. N.T. at 4-

14. Then, Appellant refused to answer any more questions and the court continued on to the suppression hearing. *Id.* at 14.

We recognize that this situation is not unique, where a criminal defendant for whatever reason does not want to work with his appointed counsel, whether a public defender or otherwise, yet also refuses or is unable to represent himself. This defendant clearly does not objectively wish to waive his right to counsel, but has done so *by his actions*. After review, we conclude that the trial court in this case committed no error. Appellant's conduct appears to be an unnecessary attempt to delay the prosecution of his case. Appellant refused to cooperate with Attorney Scarpitti and wanted another appointed counsel, yet expressed no substantial reason for firing her. Appellant alleged that counsel said something racist to him in one offhand comment at the hearing, but failed to explain what was said, or how it impacted his defense at trial. When informed that a new appointed attorney was not an available option, Appellant simply refused to continue. While Appellant's obstinance here was disruptive, we are not prepared to denote it as "extremely dilatory." Nonetheless, Appellant was informed by the trial court numerous times that he would not be receiving substituted counsel and that he would be representing himself if Attorney Scarpitti withdrew her representation. This conduct falls within the third "waiver by conduct" category as referenced in *Goldberg*.

Finding no merit to the issues presented on appeal, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/28/2025